**GLENS FALLS INSURANCE COM-PANY, Appellant,**

v.

**A. R. GRAY, Appellee.**

No. 24035.

United States Court of Appeals
Fifth Circuit.

Oct. 4, 1967.

H. O. Pemberton, Keen, O'Kelley & Spitz, Tallahassee, Fla., for appellant.

J. Robert McClure, Jr., L. Ralph Smith, Jr., Fokes, Peeples & McClure, Tallahassee, Fla., for appellee.

Before WASHINGTON,* TUTTLE and SIMPSON, Circuit Judges.

WASHINGTON, Circuit Judge:

The Glens Falls Insurance Company ("the Company") has appealed from a judgment of the District Court, upholding the right of the appellee Gray ("the insured") to receive benefits under a family automobile liability insurance policy issued to him by the Company for the year February 12, 1961 to February 12, 1962.

The insured is in the business of selling groceries, and dealing in real estate and used automobiles in Perry, Florida. He held a family automobile insurance policy issued by the Company for the year February 12, 1960 to February 12, 1961, which covered two automobiles, a 1955 Ford and a 1957 Ford, owned by him when the policy was issued. On January 10, 1961, prior to the time for renewal of this policy, he, as the parties' stipulation reads, "came into the possession of" a 1955 Oldsmobile under an agreement of purchase. He testified that, before the date for renewal of the policy, he told Sidney Edwards, the agent who represented the Company and who had handled his insurance since about 1949, that he had acquired the Oldsmobile, but that he did not desire it to be covered by his policy because it "was inactive" and had to undergo extensive repairs; and that after the repairs were completed he would decide whether to keep the Oldsmobile or to sell it.

The insured procured a renewal policy from the Company for the year February 12, 1961–February 12, 1962, the policy stating that he then owned the two Fords covered by the previous policy. On February 20, 1961, he eliminated the 1957 Ford from the policy, and an endorsement was made on the policy to that effect. Also on February 20, 1961, he acquired legal title to the Oldsmobile, obtained automobile tags for it, and was given a receipt for payment of the sales tax on the purchase.[1] It was stipulated that he did "actually own" the Oldsmobile "from February the 20th, 1961." He became the registered owner with the Motor Vehicle Commission on March 28, 1961.

Subsequently, about the end of April, 1961, the repairs on the Oldsmobile were completed and the insured decided to keep it and drive it. In July, 1961, he and James Ward, his associate in the used car business, drove in the Oldsmobile to Mayo, Florida, to talk to Edwards, agent for the Company, in his office. The insured there told Edwards that he had decided to keep the Oldsmobile and that he wanted it covered by his policy. He testified that he later, at the end of July or the first part of August, telephoned Edwards to confirm this, and that he understood from Edwards that the Oldsmobile was covered by the policy. Ward testified that he was present for a part of the time at the July interview, that he went out to get the serial number of the Oldsmobile for Edwards, that he gave it to Edwards, and that Edwards told the insured not to worry, that he was fully covered by insurance. On August 11, 1961, Edwards died of a sudden heart attack. His records contain no reference pertaining to these conversations.

On January 27, 1962, while the insurance policy was in effect, the insured, driving the Oldsmobile, was involved in an accident in which two persons were killed. He himself was hospitalized and incurred medical expenses. A judgment was entered against him in one suit, the amount of which he has paid, and he is defendant in another suit. His driver's license was suspended for thirty four months following the Company's denial of coverage under the policy, and he paid

---

* George T. Washington, United States Senior Circuit Judge, D.C. Circuit, sitting by designation.

1. It may be that the entire purchase price was also paid on February 20, 1961, although this is not clear from the record.

a chauffeur to drive him during this period. In the instant suit—which was filed in a Florida court and was removed to the District Court because of diversity of citizenship—he claims coverage under the policy for these items and for attorneys' fees incurred by him in defending the suits filed against him and those incurred in this suit.

The District Court empanelled a jury to hear the evidence and to answer three interrogatories. At the conclusion of the hearing the jury found that during July, 1961, a conversation between Edwards and the insured took place with respect to insurance coverage for the insured's Oldsmobile; and that the insured informed the Company of his ownership of the Oldsmobile for the purpose of coverage. The jury reported that it was hopelessly deadlocked on the third interrogatory as to whether or not there was an agreement between Edwards and the insured that the Oldsmobile would be covered by the Company under the existing policy. Following receipt of the jury's verdict, the District Court recorded the verdict on the first two interrogatories and declared a mistrial as to the third interrogatory. Subsequently the District Court entered a Partial Summary Judgment in favor of the insured, declaring that the Oldsmobile is covered by the insurance contract and that the Company is liable under the terms and conditions in the policy with respect to the accident on January 27, 1962, for such damages as may be proved to flow from it. Subsequent orders were issued, which fixed the amount of the damages with respect to various items. Final judgment was entered and the Company appealed.

## I.

We have concluded that we must affirm the District Court's holding that the Company is liable under the policy, with respect to the accident involving the Oldsmobile, for such damages as are covered by the policy.

1. We can not accept the Company's argument that the District Court erred in not entering summary judgment in its favor, on a motion made by it well before the hearing was concluded.

■ The District Court denied the motion for summary judgment filed by the Company, and a similar motion filed by the insured—both motions on the ground that there was at that time a genuine issue as to material fact which should be resolved by a jury. The interrogatories submitted to the jury disclose the factual issues which the District Court had in mind. The denial of summary judgment before conclusion of the hearing was clearly proper.

2. The Company argues that the District Court erred in holding, in its Order for Partial Summary Judgment in favor of the insured, that the Oldsmobile is covered by the insurance contract. Although the District Court did not set forth in detail the reasoning by which it arrived at this conclusion, its holding must be approved.

■ The Company's position is founded on Paragraphs 2 and 14 of the "Conditions" of the policy reading, so far as material, as follows:

"2. *Premium:* If the named insured disposes of, acquires ownership of or replaces a private passenger, * * * automobile, * * *, he shall inform the company during the policy period of such change. Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles * * * and a description thereof.

* * * * * *

"14. *Changes:* Notice to any agent or knowledge possessed by any agent * * * shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form, a part of this policy."

It is insisted that the insured can not benefit from the jury's finding that dur-

ing the policy year the Company had received notice of ownership for purpose of coverage before the accident,[2] since the Oldsmobile was *owned* before the policy year began and it was not added to the policy by written endorsement during the policy year. The Company's position thus seems to hinge on its view that ownership of the Oldsmobile was acquired in the year preceding the policy year.[3]

(a) We turn first to the question whether ownership of the Oldsmobile was acquired during the policy year for purposes of Condition 2. The term "acquires ownership" used in that Condition is open to several interpretations as to its meaning, at least in the circumstances here, and the policy itself does not undertake to define it. It is a well established rule in Florida, as elsewhere, that conditions set forth in an insurance policy which are ambiguous are to be construed strictly against the insurance company and in favor of coverage.[4]

■ It is clear, of course, that the insured acquired legal title to the Oldsmobile during the policy year, and, as stipulated, that he did "actually own" it from February 20, 1961.[5] We regard this stipulation as determinative that "actual" ownership was acquired during the policy year. There was no further evidence which would compel the District Court to find, in opposition to the stipulation, that ownership was acquired along with possession in the preceding year.[6]

■■ We need not, however, rest our decision on this stipulation alone, for here we are concerned with the year in which ownership was acquired for a particular purpose—that of automobile liability insurance. For this purpose, "ownership" of the Oldsmobile in any meaningful sense was acquired during the policy period. The facts outlined above indicate that, before the policy year began, the insured had *possession only* of an *unusable* automobile. The possession of an automobile needing major repairs —which was not intended to be used and was not used until after the repairs were completed during the policy year—can hardly be thought to be ownership for liability insurance purposes,[7] since the

2. The jury's findings that the insured conversed with Edwards during July, 1961, with respect to coverage for the Oldsmobile and that he at that time informed the Company of his ownership for the purpose of coverage seem not to be challenged, nor could they be in view of the evidence heard by the jury. It is the general rule in Florida that an insurance company is charged with knowledge of the facts known to its authorized agent, even though that agent may not have communicated what he knows to the company. Johnson v. Life Ins. Co. of Georgia, 52 So.2d 813, 815 (S.Ct.Fla.1951). Edwards was admittedly the Company's authorized agent.

3. It appears to be conceded that if ownership of the Oldsmobile was acquired during the policy year, the Oldsmobile would be covered, the notice required by Condition 2 having been given. It is to be noted that Condition 2 does not state that the premium adjustment shall have been made and collected before coverage shall take effect.

4. Boston Insurance Co. v. Smith, 149 So.2d 68, 70 (1st DCA Fla.1963), and cases cited; Beasley v. Wolf, 151 So.2d 679

(3d DCA Fla.1963); see also Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d 761 (8th Cir. 1962), and cf. Indiana Lumbermens Mutual Insurance Co. v. Russell, 243 La. 189, 142 So.2d 391 (1962).

5. The stipulation was that the insured "came into the possession" of the Oldsmobile "in January 1961, and he had formal papers for its ownership and did actually own it from February the 20th, 1961, through all the dates involved here, * * *"

6. Cf. the statement in General Finance Corp. of Jacksonville v. Sexton, 155 So. 2d 159, 161 (1st DCA Fla.1963):
"The legal efficacy accorded the registered title holder of a motor vehicle by statute is the strongest indication of ownership afforded any type of personal property and rights of ownership are dependent thereon."
And cf. Register v. Redding, 126 So.2d 289 (1st DCA Fla.1961).

7. We have examined the coverage provisions of the policy, insofar as they are legible, in the record. The only types of coverage which do not relate to an oper-

principal purpose of such insurance is to provide coverage for an automobile which is to be driven and which may become involved in an accident or other mishap. It would be highly unrealistic, for this type of insurance, to treat an automobile as having been acquired before it is operable. The Company was, of course, on notice in the year preceding the policy year that the automobile had been purchased, but that coverage was not then desired because it was inoperable. And the Company was on notice in the policy year, after the repairs had been completed, that coverage was then desired and requested, as the jury found. In the face of the particular facts here,[8] we must conclude that the term "acquires ownership" in Condition 2, for purposes of this case, may properly be construed as comprehending the acquisition of the *operable* Oldsmobile, along with title and "actual" ownership, as stipulated, during the policy year.

No claim is made here for coverage before that time. Having received notice during the policy year and before the accident that the Oldsmobile was operable and that coverage was then desired, Condition 2 of the policy was complied with and it became the responsibility of the Company to notify the insured of the premium adjustment, if any adjustment was required under its manual, as provided in Condition 2.[9] Indeed, the Company so concedes, as we understand its position. See fn. 3, supra.

█ Furthermore, the District Court could conclude that the Company can not defeat coverage by reliance on Condition 2. See Beasley v. Wolf, 151 So.2d 679 (3d DCA Fla.1963). In that case the insured acquired an additional automobile during the policy period but failed to notify the insurance company of its acquisition and to request coverage. The new automobile was involved in an accident and the insurance company denied liability. The court held that the new automobile was an "owned" automobile for Part I coverage (liability purposes), and said with respect to a policy condition, requiring notice, similar to that here (p. 681):

> "As to the failure of Rudolf Wolf to comply with that condition of the policy requiring the named insured to inform the company within thirty days of acquiring an additional automobile, we hold that under the facts of this case such failure does not eliminate liability for an accident involving a car owned by the named insured but not listed on the face of the policy. It is to be noted that this condition is titled "Premium" and the sentence following the thirty-day notice requirement has to do with necessary premium adjustment. Thus, at the very least, *it is a requirement which has an ambiguous function; and under the rule stated before, such ambiguity must be resolved in favor of the insured."* (Italics supplied.)

The view is thus justifiable in this case that the premium condition of the policy applies only to require notice within the indicated time for the purpose of adjusting the premium, and not for the purpose of defeating coverage. In our case, of course, unlike the *Beasley* case, the Company had notice during the policy period and prior to the accident that coverage of the Oldsmobile was desired.

---

able vehicle owned by the insured are parts of Coverages D, I, and J. Here, of course, we are concerned only with construing the term "ownership" for liability and related purposes.

8. We note that our attention has not been directed to any case which has facts at all similar to those here, in respect of the notice given to the Company.

9. Cf. Pennsylvania Threshermen, et al Ins. Co. v. Traister, 173 So.2d 153 (2d DCA

Fla.1965), in which no notice of the acquisition of a truck—the truck operable and the ownership otherwise complete—in a previous policy period had been given, and no notice of acquisition or request for coverage was made during the policy period until after the truck had been involved in an accident. It was held in that situation that the truck was not covered by the policy.

This makes it even clearer that the ambiguous Condition 2 relating to "Premium" can not be used here to defeat coverage.

The District Court's decision that the Company is liable under the terms of the policy derives further support from the decision in Boston Insurance Co. v. Smith, 149 So.2d 68 (1st DCA Fla.1963). There, after an application for insurance, listing the only automobile then owned, had been made, a new automobile replacing the listed one was acquired before the policy had been issued and before the policy period had begun. The court held that the new automobile was covered as to an accident occurring during the policy period, even though notice to the insurance company of the acquisition had never been given. The *Boston Insurance* case did not involve the acquisition of an "inoperable" new automobile and it did not involve the same policy provision as that here involved (Condition 2). But on the assumption that ownership of the Oldsmobile in this case was acquired *before* the policy period commenced (contrary to our view), the *Boston Insurance* case would seem to dictate that the Oldsmobile is covered by the policy. And in a case involving the acquisition, before the policy period had commenced, of an inoperable automobile, which became operable during the policy period, the Supreme Court of Washington *en banc* relied on the *Boston Insurance* case in holding that the damages resulting from an accident, occurring after the new vehicle had become operable, were covered by the policy, even though no notice of the acquisition was given to the insurance company until after the accident. National Indemnity Co. v. Giampapa, 65 Wash.2d 627, 399 P.2d 81 (1965).[10] We note again that the Company here had notice as to the acquisition of the Oldsmobile and the insured's desires with respect to coverage in both the policy year before the accident, and in the preceding year.

(b) We are unable to accept the implication of the Company's argument with respect to Condition 14, quoted above, p. 523. That Condition deals with waivers or changes in the policy terms. The Company appears to say that until an endorsement had been made on the policy listing the Oldsmobile as an "owned" automobile, it could have no liability for the accident, notwithstanding the notice given to it before the accident that coverage was desired, as the jury found.

We assume that this argument is urged seriously only if this Court should agree that ownership of the Oldsmobile was acquired in the year preceding the policy year, see fn. 3 supra. We have already indicated our view that ownership was acquired during the policy year. And we do not regard the District Court's order as effecting a waiver or change of any policy terms. Instead, we think the District Court applied those terms to an automobile acquired during the policy year, as to which the Company was fully notified and for which coverage had been requested. But in any case, even assuming that ownership was acquired in the preceding year, the view urged by the Company would permit an insurance company to avoid liability with respect to any additional automobile which an insured may acquire, despite notification and a request for coverage, merely by doing nothing—not rejecting the application for coverage, not proceeding with adjustment of the premium, and not endorsing the policy. Cf. Western Mutual Insurance Co. v. Wood, 246 Iowa 1143, 70 N.W.2d 563 (1955). It is of course obvious that an insured is unable to determine the additional premium himself without advice from the company, and it is equally obvious that the insured cannot endorse the policy *ex parte*. We are not prepared to penalize the insured because the agent may have failed to implement the insured's request for coverage and have the policy endorsed before his death. The Company must be

10. The *Boston Insurance* and *Giampapa* cases, however, appear to represent a minority view. See the discussion in the Giampapa case, and cf. Brown v. State Farm Mutual Automobile Ins. Co., 306 S.W.2d 836 (Ct.App.Ky.1957), dealing with acquisition of an inoperable automobile.

charged with its agent's knowledge and failure to act.

We do not mean that the Company should be subjected to liability for coverage of two cars for only one premium during the policy year. Despite the Company's failure to proceed with adjustment of the premium, we think that the Company should not be barred from now claiming the amount, if any, which is due under its manual in effect during the policy year and, if that amount is not otherwise collected, the District Court should credit the amount due against the final judgment in favor of the insured.

3. It is argued that the District Court erred in stating in its order "that one agreement of insurance existed between the parties resulting from one or several renewals of the original contract of insurance." We deem it unnecessary to pass on this asserted "error", except to point out that, on the view we take, the "error", if any, could have no effect on the ultimate result.[11]

## II.

■ It is contended that the District Court erred in excluding from the jury's consideration the testimony of an officer of the Florida Highway Patrol that he had interviewed the insured in the hospital a few days after the accident, and had been told by the insured that he did not know whether or not the Oldsmobile was covered by insurance. We hold that it was not error to exclude this statement.

Section 317.171 of the Florida Statutes, 1961, F.S.A., provides in part:

"All accident reports made by persons involved in accidents shall be without prejudice to the individual so reporting * * *. No such report shall be used as evidence in any trial, civil or criminal, arising out of an accident, * * *."

Under the statutory language, the ruling that the insured's statement to the officer is not admissible in this civil case, arising out of the accident, seems plainly correct.

■ Moreover, the question of whether the Oldsmobile is covered by the policy in effect for the year involved is a question of law which was before the District Court when it ruled, and is now before this Court. The insured's statement to the officer was an inconclusive statement, which would have no probative force at best. And a statement by a layman on a question of law to be decided by the Court, even if it had expressed the layman's opinion, would hardly be considered admissible, even if the statute did not bar it.

## III.

The Company contends that it was error to award to the insured the amount of $2,040 found to have been paid by him for the services of a chauffeur during the thirty-four month period in which his driver's license was suspended under Florida law following the Company's denial of liability under the policy. It is argued that an item of this kind cannot reasonably be said to come within the coverage afforded by this policy.

The District Court did not refer to any provision of the policy to support its holding that the chauffeur's salary is allowable, and the insured has cited none to us. Nor has any other authority been cited which suggests that the award of this amount was proper. Nevertheless, we have examined the policy as reproduced in the record, to the extent that it is legible, and find no provision therein which appears to extend coverage for an item such as this.

This District Court made no finding that the Company acted unreasonably or irresponsibly in contesting the liability under the policy in respect of the acci-

11. If ownership of the Oldsmobile was not acquired before the policy year in question began, the asserted "error", if any, is a harmless one not affecting the decision. On the other hand, if the Oldsmobile should be deemed as having been owned before the beginning of the policy period, the Company was fully advised and notice was given during the policy period and before the accident, that coverage was desired. Coverage follows under the Boston Insurance case, discussed above.

**528**

dent in the circumstances here presented,[12] nor was a finding made that, because he himself could not drive, it was essential or necessary that the insured hire a chauffeur for his separate use for business [13] or for any other purpose. Further, no finding was made as to the proper separation of the chauffeur's time between necessary business use and nonessential other uses.

In view of all these circumstances, we must hold that the District Court erred in including in its final judgment an award of $2,040 for the chauffeur's salary.

The case is remanded to the District Court for elimination of this amount from its judgment, and for recoupment by the Company of the additional premium due, if any, not otherwise received, for coverage of the Oldsmobile during the policy year. The judgment is otherwise affirmed.

---

12. Cf. American Fidelity Fire Insurance Co. v. Johnson, 177 So.2d 679, 681–683 (1st DCA Fla.1965).

13. There was evidence suggesting that the insured might have been able to arrange to use the cars and drivers employed in his grocery and used car businesses to make such business trips as he may have had.