Hyman Reiner and Judith Reiner, Plaintiffs, v. St. Paul
Fire & Marine Insurance Company, a Stock Com-
pany, Defendant.
Judith Reiner, Plaintiff-Appellee, v. St. Paul Fire &
Marine Insurance Company, a Stock Company, Ap-
pellant.

Gen. No. 53,409.

First District, First Division.
February 17, 1969.

Clausen, Hirsh, Miller & Gorman, of Chicago (Frank
L. Schneider and James T. Ferrini, of counsel), for ap-
pellant.

Rosner and Walner, of Chicago (David N. Rosner, Har-
vey L. Walner, and Barry S. Grossman, of counsel), for
appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

Plaintiff, Judith Reiner, brought this action upon a policy of homeowners insurance issued by the defendant, St. Paul Fire & Marine Insurance Company (hereinafter referred to as St. Paul), to recover damages in the amount of $3,000 for loss by theft of personal property.

Plaintiff and defendant each filed a motion for summary judgment based upon the undisputed facts as established by plaintiff's deposition. Defendant's motion was denied. The trial court granted plaintiff's motion on the issue of liability and then, upon a trial on the issue of damages, entered judgment for plaintiff in the amount of $1,500. Defendant appeals from the order denying its motion for summary judgment and the order granting plaintiff's motion and entering judgment for plaintiff.

Judith Reiner was a student at the University of Michigan, Ann Arbor, Michigan, during the 1965–1966 school year. Miss Reiner rented and lived at Apartment 5–H of University Towers, a student residence building. The apartment and storage locker had been rented by her in August, 1965, under a one-year written lease. Although she was a lessee under the lease throughout the summer of 1966 and remained liable for the payment of rent for such period, she did not enroll in the summer trimester (May to August 1966) and during that period of time resided in her parent's home at 4250 North Marine Drive, Chicago, Illinois.

Upon leaving school in May, 1966, for summer vacation, Miss Reiner had stored property at the alleged value of $3,000 in her rented locker. In August, 1966, she returned to University Towers to resume her residence for the 1966–1967 school year. She discovered the loss upon returning to her locker to obtain her property preparatory to moving into a new and different apartment.

St. Paul denied the claim then presented by the plaintiff and based its defense upon the clause providing:

Exclusions applicable to property away from described premises:

This policy does not apply as respects this peril (theft) to loss away from the premises of: (a) property while in any dwelling or premises thereof owned, rented or occupied by an insured, *except while an insured is temporarily residing therein,* . . . . (Emphasis added.)

Both parties agree that the sole question presented on appeal is one of law, to wit: whether the plaintiff was "temporarily residing" in the leased premises at the time of the theft.

The insurer, St. Paul, contends that while the homeowners policy provides coverage against various risks at the plaintiff's permanent residence (apartment 2315–S at 4250 North Marine Drive, Chicago), such coverage is limited to the described premises except under limited circumstances. The policy stipulated that coverage would be nonexistent should the loss occur at a secondary residence, except while the insured is "temporarily residing" therein. The defendant maintains that the plaintiff's total neglect and abandonment of her apartment and its locker during the entire 1966 summer season cannot be characterized as "temporary residence" therein within the purview of the exception to the exclusion.

█ Plaintiff contends that she never intended to give up her temporary residence and that her intent was the controlling factor. "The mere fact that . . . [she] was not actually present in her apartment for a short period of time does not mean that she was not temporarily residing there at the time of the theft." Plaintiff claims that under this policy one need not be physically present to be temporarily residing in the secondary residence. The plaintiff also claims, and we agree, that an insurance contract should be construed liberally and most strongly in favor of the insured and strictly against the insurer.

212

Weininger v. Metropolitan Fire Ins. Co., 359 Ill 584, 195 NE 420. Likewise, if there is any ambiguity created by the contract of insurance the burden should undoubtedly be borne by the insurance carrier.

A situation similar to that in the case at bar is found in Bryan v. Granite State Ins. Co. (La), 185 So2d 310 (1966). There the plaintiff brought an action to recover damages for loss by theft of personal property and the same "off premises" exclusion clause was involved. The loss occurred, not from the described or permanent residence, but from an apartment which the insured held under an oral lease. The apartment was a secondary home maintained for occasional overnight use when the plaintiff and his wife went to New Orleans for social gatherings or to go to the theater. Sometime within a four-day period when the apartment was vacant and the plaintiff was at his permanent residence, the apartment was burglarized. The Court affirmed the trial court's dismissal of the suit, stating at pp 312–13:

> "The policy exclusion is plain and free from ambiguity. The policy does not cover temporary residences per se and in all events. It covers thefts from premises other than the described premises only 'while an insured is temporarily residing therein.' To hold that the policy covers temporary residences per se as plaintiffs contend, would be to read out the plain and unequivocal language of the policy, and to read into it something that is not there at all.

> "We shall not attempt to define the phrase 'residing in.' Its meaning is plain. A person who maintains a permanent abode in New Orleans may own or lease a 'temporary residence' on the Gulf Coast which he occupies during the summer months, but he cannot be said to be 'residing therein' at a time when he is not occupying the place but is living in the home in New Orleans. As a matter of fact a per-

son may have several cottages, camps or other places of residence in addition to the premises described in the policy which he may occupy from time to time, but he cannot 'reside' in all of them at the same time.

"Under the facts of this case we cannot hold that the Bryans were 'temporarily residing' in the apartment when the theft occurred. They had not visited the apartment for at least four days and were 'residing' in Lacombe at the time. We do not hold, nor does defendant contend, that in order to recover under the policy, the Bryans must have been physically present in the apartment at the time of the burglary. If the theft had occurred on one of the nights that they were staying over at the New Orleans apartment to attend a party or a function at a friend's home, there would have been coverage even though they had been absent at the time the burglar entered it. They would have been 'residing in' the apartment, though not physically present. In the same manner Bryan may be said to reside at Lacombe although he spent his working hours of each day tending to his law practice in New Orleans."

██ We agree with the Louisiana Court that the proper construction of the "off premises" exclusion clause is that the insured must temporarily reside in the secondary residence in order to be covered by the homeowners policy insuring the principal residence. Under the facts in the instant case we are constrained to hold that Miss Reiner was not "temporarily residing" in the Ann Arbor apartment when the theft occurred. Cf. Philip Blum & Co., Inc. v. Standard Acc. Ins. Co., 336 Ill App 354, 83 NE2d 605 (abstract). We do not hold, nor does the defendant contend, that in order to recover the plaintiff cannot be absent from the temporary residence for even a short period of time. But here, by plaintiff's own ad-

mission, she remained away from the Ann Arbor apartment for three months.

The rule of construction put forth by the plaintiff, that the language of an insurance contract should be liberally construed in favor of the insured, applies in cases of doubt and ambiguity. However, where there is no ambiguity in the language used, as in the present case, it is the duty of the courts to construe and enforce agreements in accordance with their terms and not to make new contracts for the parties. Blume v. Pittsburgh Life & Trust Co., 263 Ill 160, 104 NE 1031; Crosse v. Supreme Lodge Knights and Ladies of Honor, 254 Ill 80, 98 NE 261. It would serve no useful purpose to discuss the cases cited by plaintiff since they either do not involve insurance policies or are not analogous to the facts in the case at bar.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is reversed.

Reversed.

ADESKO, P. J. and MURPHY, J., concur.