384 So.2d 1363 (1980)
Oscar V. BEDGOOD and Vernon Bedgood, Appellants,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellee.
No. OO-430.
District Court of Appeal of Florida, First District.
July 3, 1980.
*1365 James C. Husbands of Nabors & Husbands, Panama City, for appellants.
Lynn C. Higby of Isler, Higby, Brown, Smoak & Watson, Panama City, for appellee.
ERVIN, Judge.
The Bedgoods challenge the trial court's final summary judgment holding Oscar Bedgood's 1963 Mercury was not a covered vehicle under his automobile insurance policy. They argue that although he acquired the Mercury before the effective date of the policy, the vehicle did not acquire its status as an owned automobile until after it became operable and, because its operability occurred within 30 days of the date of the insureds' accident, coverage was afforded. We agree that genuine issues of material fact remain unresolved and so reverse and remand.
Our determination of the correctness of the trial court's summary judgment is somewhat complicated due to the sparse record before us. The stipulated facts show only that on March 3, 1976, Oscar Bedgood purchased the Mercury, later involved in an accident while being driven by Bedgood's son, Vernon. Following Oscar Bedgood's acquisition of the Mercury, Hartford insured him and his 1965 Ford Falcon for the policy year beginning May 22, 1976. The Mercury was never added to the policy nor was the issuing agent ever requested to do so. Finally, title was never transferred to Bedgood's name at the Department of Motor Vehicles, and the automobile was not operable on the public highways until August 4, 1976, four days before the accident.
The basis of the Bedgoods' claim for coverage, and the insurer's denial of it, rests upon that clause of the policy automatically insuring newly acquired automobiles. It provides:
`[O]wned automobile' means
* * * * * *
(c) a private passenger, ... automobile ownership of which is acquired by the named insured during the policy period, provided
* * * * * *
(2) the company insures all private passenger, . .. automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, ... .
On its face the clause appears to prohibit coverage of an automobile acquired more than 30 days before the occurrence of an accident if the company was not notified by the insured of its acquisition. Were we to conclude that the 1963 Mercury was precisely that  an automobile  our inquiry would be ended, and the judgment in favor of the carrier should necessarily be sustained. The policy, however, does not explicitly define automobile, but does motor vehicle, described as "a 4-wheel self-propelled vehicle of the type required to be registered and licensed under Florida law... ." The registration and licensing requirements of Florida motor vehicles are set out under Chapter 320, which specifically includes automobile within its definition of motor vehicle. See Section 320.01(1)(a). Additionally, the policy defines an insured motor vehicle as "a motor vehicle of which the named insured is the owner and with respect to which (a) bodily injury liability and insurance of the policy applies and (b) security is required to be maintained under the Florida Automobile Reparations Reform Act, ... ." The Act requires an insurer to pay PIP benefits to certain persons occupying an owner's vehicle provided such *1366 persons do not own unprotected motor vehicles for which security is compelled. Section 627.736(4)(d). This court has consistently held that only those motor vehicles which are required by Florida law to be registered are subject to the security requirements of the Act, and there are no registration or security requirements for motor vehicles which are neither operated over the public streets or highways of Florida nor maintained for that purpose. Staley v. Florida Farm Bureau Mut. Ins. Co., 328 So.2d 241 (Fla. 1st DCA 1976); Tapscott v. State Farm Mutual Automobile Ins. Co., 330 So.2d 475 (Fla. 1st DCA 1976); Ward v. Florida Farm Bureau Cas. Ins., 375 So.2d 898 (Fla. 1st DCA 1979); Malen v. American States Insurance Co., 376 So.2d 473 (Fla. 1st DCA 1979). Thus a vehicle previously required to be registered is excused from registration requirements, and its owner correspondingly excused from the security requirements of the Reparations Reform Act "when the owner no longer `maintains' the vehicle in order to operate it on public streets and highways." Tapscott v. State Farm Mutual Automobile Ins. Co., supra, at 477.
Clearly, if there are no security requirements for vehicles not maintained for operation on Florida's public streets, it would be illogical to require an owner to notify an insurance company of such a vehicle's acquisition within 30 days thereafter since the sole purpose of such notification is simply to provide security for the acquired vehicle. And so we conclude that the word "automobile" in the automatic coverage clause, when harmonized with other provisions of the policy and Florida law, means one operated over the public streets and highways or maintained for that purpose. And, if not so used, it need not be insured.
We are not unaware that a sizable body of out-of-state cases holds that coverage of a newly-acquired automobile is not dependent upon the vehicle's condition, but turns simply upon when it was acquired. E.g., Wisbey v. Nationwide Mutual Insurance Co., 264 Or. 600, 507 P.2d 17 (1973); Stockberger v. Meridian Mutual Insurance Co., 395 N.E.2d 1272 (Ind. App. 1979) ("an automobile is an automobile... ." Id. at 1276); Illinois National Insurance Co. v. Trainer, 1 Ill. App.3d 34, 272 N.E.2d 58 (1971); Brown v. State Farm Mutual Insurance Co., 306 S.W.2d 836 (Ky.App. 1957); Providence Washington Insurance Co. v. Hawkins, 340 S.W.2d 874 (Tex.Civ.App. 1960). Those cases did not, however, involve policies which, as the one before us, defined motor vehicle as one required to be licensed and registered under Florida law and to be secured and maintained under the Florida Automobile Reparations Reform Act.
Having determined that the term "automobile" is subject to the above construction, we find it impossible to glean from this sparse record whether the 1963 Mercury's condition was such that it was maintained for operation over the public highways for a period no less than 30 days before the accident. We know only it was not operable until four days preceding the accident. Mere inoperability of the vehicle does not satisfy the test, although it is unquestionably a factor to be considered in determining whether the Mercury was a vehicle required to be secured. Other pertinent questions include the length of time of the automobile's inoperability before the accident, see, Tapscott, supra, the extent of the vehicle's inoperability, Malen v. American States Ins. Co., supra, whether it was placed in storage prior to its restoration to operability, Staley v. Florida Farm Bureau Ins. Co., supra, and the subjective element of whether the owner intended to maintain the vehicle on the public streets. Ward v. Florida Farm Bureau Cas. Ins., supra. For example, a jeep, not operable on the highway due to a lack of rear brakes and other major deficiencies, and intended by its owner to be used only on farmland, was held not an automobile within the automatic coverage clause. Martin v. Nationwide Mutual Fire Insurance Co., 235 So.2d 14 (Fla. 2d DCA 1970). Other cases have also recognized that vehicles needing major repairs are not automobiles within the terms of policy. See Quick v. Michigan Millers Mutual *1367 Insurance Co., 112 Ill. App.2d 314, 250 N.E.2d 819 (2d Dist. 1969); Luke v. American Family Mutual Insurance Company, 476 F.2d 1015 (8th Cir.1973). However, a vehicle requiring only minor repairs, such as the replacement of a battery, Farmers Insurance Company of Washington v. Miller, 87 Wash.2d 70, 549 P.2d 9 (1976), or a reverse gear, GEICO v. Titus, 18 Wash. App. 208, 566 P.2d 990 (1977), would not lose its status as an owned automobile.
In summarizing the various cases which construed clauses similar to that before us, the Second District Appellate Court of Illinois stated:
In those cases where the circumstances  be they the combination of the degree of disrepair of the car, the intent of the owner, or otherwise  suggest that the nonoperating condition is a mere temporary one, the courts have been inclined to find that the vehicle was an "automobile" within the terms of the policy. In those cases where such circumstances suggest either that the inoperable condition is probably permanent, or apt to be of long duration with little reasonable possibility of restoring the car to a condition where it can be driven on the roads, the courts have then tended to find that the vehicle is not an "automobile" within the terms of the policy. Quick v. Michigan Millers Mutual Insurance Co., supra, at 821.
The final summary judgment is reversed and remanded for further proceedings consistent with this opinion.
WENTWORTH, J., concurs.
ROBERT P. SMITH, Jr., J., dissenting with opinion.
ROBERT P. SMITH, Jr., J., dissenting:
I cannot agree that the clause automatically insuring newly acquired automobiles operates to cover Bedgood's 1963 Mercury, which was in an accident on August 8, 1976. Bedgood acquired that automobile on March 3, 1976, before the policy period began on May 22, 1976. Even if this policy renewed an earlier Hartford policy, Bedgood did not notify Hartford, "within 30 days after the date of such acquisition," that he had acquired and wished to insure the Mercury under the Hartford policy. On those grounds, in my opinion, the trial court's judgment for Hartford should be affirmed.
This Hartford policy specifically insured a described 1965 Ford for which a specific premium was charged, and also insured any other private passenger automobile
... ownership of which is acquired by the named insured during the policy period, provided ... the company insures all private passenger ... automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile ...
The purpose of this standard clause is apparent on its face. When an insurer insures all the automobiles of a named insured, and he has paid premiums for that coverage, this clause indulges the presumption that he intends, at his early convenience, to buy similar insurance for his newly acquired automobile. Therefore, in order to cover the insured from the moment he is likely to need coverage  when he takes title or delivery of his new automobile  the insurer immediately and automatically insures that automobile on the terms, limits, and conditions of the insured's existing policy. To extend that coverage beyond 30 days from the acquisition date, the insurer requires only that the insured, "within 30 days after the date of such acquisition," notify the insurer of the acquisition and of his election to insure the new automobile under that particular policy. For insurance beyond 30 days, in other words, the insurer wishes to know what coverage is desired and that a premium is forthcoming.
I think two propositions are evident: First, automatic coverage is not afforded for an automobile acquired by the insured before the policy period began, for on that *1368 date he presumably chose to insure one owned automobile but not the other; and second, the parties to the contract agreed that automatic insurance afforded for a newly acquired automobile should exist only for 30 days, during which time the insured must take steps to buy any permanent insurance he desires. See Coleman v. Atlantic National Ins. Co., 166 So.2d 620 (Fla.3d DCA 1964);[1] 12 Couch on Insurance (Second), Section 45:181 et seq.; 1 Long, Liability Insurance Section 4.08; Annot., 34 A.L.R.2d 936, 940 (1954).
I do not think it can reasonably be said that Bedgood's new Mercury was insured on August 8, 1976, despite his failure to notify Hartford within 30 days of the date of acquisition, March 3, or at any other time, that he wished to insure the Mercury under the terms of this Hartford policy. I disagree with the dicta or alternative holding in Glens Falls Ins. Co. v. Gray, 386 F.2d 520 (5th Cir.1967), suggesting that the inoperability of a newly acquired automobile, indisputably acquired during the policy period, postponed the beginning of the 30 day notice period until the vehicle was repaired.[2] I agree with the criticism of Glens Falls stated in Allstate Ins. Co. v. Stevens, 445 F.2d 845 (9th Cir.1971). As the trial judge so cogently said in his summary judgment in the case before us, such a construction of a policy
... would result in uncertainty in the insurance contract as a whole since, conversely, the insurance company could argue that coverage would be suspended during intermittent periods of time when a vehicle is not operable, or alternatively, the insured could argue that he would be entitled to a premium rebate for intermittent periods of time when the insured vehicle might be inoperable.
In my opinion this automatic coverage cannot reasonably be held to come into existence at the uncertain time the insured regards his new automobile as operable. As for the claim that an automobile is not an automobile until the owner puts it in operable condition, I join the Illinois appeals court which said, in Illinois National Ins. Co. v. Trainer, 1 Ill. App.3d 34, 38, 272 N.E.2d 58, 61 (1971):
The "object" purchased in Missouri and towed to Illinois by Annie was neither a surrey, a Sherman tank nor a bobsled, although it partook of certain characteristics of all three. It was a passenger automobile and no use of a collective noun, however ingenious, can change that.
The (wrecked) Corvette was "acquired" on March 23, 1962, as an automobile and no coverage was afforded .. . since Illinois did not know of its existence until more than 30 days had expired.
See also 12 Couch, supra, Section 45:201 at p. 246-47:
The commencement of the period is not delayed by the fact that the insured does not put the new automobile into immediate use, nor by the fact that because of its condition, it cannot be put into immediate use, nor that substantial repairs and alterations are required before it may be used. Regardless of the circumstances, the period for notice is not extended by *1369 the fact that the automobile was not in operating condition until a later date.
And 1 Long, supra, Section 4.08 at p. 4-12.2:
An automobile, although in need of repairs to make it operatable, is still an automobile as this term is ordinarily understood. When an owned automobile is repaired, the insured doesn't acquire a new automobile; he has only repaired an automobile he owns. So after repairing it, the insured takes it out for a trial run and is involved in an accident; there is no coverage under the newly acquired provision.
I do not think decisions favoring the insured in disputes over PIP and uninsured motorist benefits should govern this case. The majority finds that Bedgood's Mercury was automatically insured on the date of accident, five months after he acquired the automobile, on reasoning drawn from decisions awarding PIP or uninsured motorist benefits to an injured claimant notwithstanding that he owned another automobile, uninsured, at the time of his injury. The central question in those cases was this: Did claimant violate a statute requiring that he insure that collateral vehicle, and on that ground should he be denied PIP or uninsured motorist coverage in a loss not involving that vehicle? Answering, those decisions say the collateral vehicle, if inoperable or neither used nor maintained for use on the highway, didn't require insurance; and its noninsurance is no ground to deny claimant benefits under a policy claimant or someone else did pay for. The same reasoning accounts for such decisions as Martin v. Nationwide Mut. Fire Ins. Co., 235 So.2d 14 (Fla.2d DCA 1970), and Southern Ins. Co. v. Charlotte Storage & Warehouse, Inc., 251 So.2d 725 (Fla.2d DCA 1971), holding that the automatic 30-day coverage provision wasn't made inapplicable to a new car the insured drove into a highway collision, within 30 days after acquisition, by the insured's ownership of another, uninsured vehicle which was not in operation or maintained for use on the highways.
Here there is no collateral insurance question, nor any issue about a collateral vehicle's need for insurance at the time of the insured's loss. This Mercury was required by statute to be insured when it was operated into a highway collision on August 8, 1976. Any time during the five months Bedgood owned the car, at Bedgood's convenience before or after he repaired it, a telephone call by him to his agent would have insured the car. In the absence of that call and Bedgood's agreement to pay a premium for insurance beginning on a certain date, he had no insurance. I know of no reason why the automatic 30-day insurance provision, which by its terms expired April 3, 1976, should be extended indefinitely, at the insurer's uncompensated risk, on the theory that the Mercury didn't become an automobile until it was fixed.
NOTES
[1] This court's decision in Boston Ins. Co. v. Smith, 149 So.2d 68 (Fla. 1st DCA 1963), which extended coverage to a car owned before the policy period, has been read as finding ambiguity in the standard clause then in common use. 1 Long, supra, section 4.08 at fn. 2.2; Glens Falls Ins. Co. v. Gray, 386 F.2d 520, 526 fn. 10 (5th Cir.1967). What Boston Insurance held, rather, was that the policy provision was ambiguous in its application to an unlisted Pontiac which the insured acquired three days after applying for insurance on his Mercury, but several days before the policy was issued for a term also beginning after the Pontiac was acquired.
[2] Glens Falls stated, 386 F.2d at 524-25:

The possession of an automobile needing major repairs  which was not intended to be used and was not used until after the repairs were completed during the policy year  can hardly be thought to be ownership for liability insurance purposes, since the principal purpose of such insurance is to provide coverage for an automobile which is to be driven and which may become involved in an accident or other mishap. It would be highly unrealistic, for this type of insurance, to treat an automobile as having been acquired before it is operable.