BRYCE M. GRIFFIN, Plaintiff-Appellee, *v.* JUNIOR DILLINGER *et al.*, Defendants (State Employees' Retirement System of Illinois, Intervenor-Appellant; The Department of Transportation, Intervenor).

Fourth District   No. 4—82—0826

Opinion filed August 8, 1983.

WEBBER, P.J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield (Edward C. Hurley, Assistant Attorney General, of counsel), for appellant.

R. John Alvarez, of Knuppel, Grosboll, Becker & Tice, of Petersburg, for appellee.

JUSTICE TRAPP delivered the opinion of the court:

This is an appeal by intervenor, the State Employees' Retirement System (Retirement System), from an order of the circuit court denying it a lien for retirement account contributions and disability payments made on behalf of plaintiff, Bryce Griffin. The trial court de-

nied a lien for both. The principal issue raised by intervenor is whether section 14—129 of the Illinois Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 14—129) grants a lien against a personal injury settlement for disability benefits and retirement account contributions made to a retirement system member. We affirm in part, and reverse in part.

On December 4, 1978, plaintiff was injured in a truck accident while employed with the Illinois Department of Transportation ( Department). Plaintiff was unable to return to work for approximately two years and received workers' compensation benefits of $49,942.98 as a result of his injuries. During plaintiff's absence from work, the Retirement System also paid plaintiff $3,400.69 in disability benefits and made contributions to his retirement account in the amount of $1,213.94.

On February 15, 1980, plaintiff filed suit against the driver of the truck, Junior Dillinger, and his alleged principal, Gerald Roberts, seeking recovery of damages for his personal injuries. On the day set for trial, plaintiff settled with the defendants for $72,000. Plaintiff later filed a "Petition to Determine Amount of Lien" which alleged that a settlement had been negotiated by the parties and requested the court to determine the amounts of liens asserted by both the Department and the Retirement System against the recovery. Plaintiff stipulated that the Department was entitled to a lien for workers' compensation benefits he received but denied that the Retirement System was entitled to a lien for disability payments or retirement account contributions.

The trial court allowed the lien of the Department but denied the lien asserted by the Retirement System. The trial court denied the lien for retirement benefits because, in the words of the trial judge, the "Illinois Pension Code *** provides that the State may be paid or reimbursed" not "shall"; the lien for retirement account contributions was denied, the trial court concluded, because no provision of the Pension Code authorized such.

The State Employees' Retirement System is a retirement and benefit system for employees of State departments which provides retirement, death, and disability benefits for employees and their dependents. (Ill. Rev. Stat. 1981, ch. 108½, par. 14—101.) Under section 14—123 of the Illinois Pension Code, an employee injured while in the performance of his duties becomes entitled to disability benefits of 75% of final average compensation until certain terminating events occur. (Ill. Rev. Stat. 1981, ch. 108, par. 14—123.) Plaintiff was paid such occupational disability benefits by the Retirement System in the

amount of $3,400.69.

Section 14—129 of the Illinois Pension Code (Ill. Rev. Stat. 1981, ch. 108½, par. 14—129) provides the system with a right of subrogation where certain benefits have been paid to an employee as a result of injuries sustained by such employee because of a third-party tortfeasor. The portion of section 14—129 which is the subject of this appeal is as follows:

> "In those cases where the injury or death for which an occupational disability or death benefit is payable under this Article was caused under circumstances creating a legal liability for damages on the part of some person other than the employer to pay damages, all of the rights and privileges, including the right to notice of suit brought against such other person and the right to commence or join in such suit, as given the employer, together with the conditions or obligations imposed under paragraph (b) of Section 5 of the 'Workers' Compensation Act', are also given and granted to the System *to end that the System created by this Article may be paid or reimbursed for the amount of occupational disability or death benefit paid* or to be paid by the System to the injured employee or his personal representative in the event of death by the System out of any judgment, settlement, or payment for such injury or death obtained by such injured employee or his personal representative from such other person, or be paid or reimbursed for such amount paid or to be paid by the System to the surviving spouse or children of such employee by virtue of the injury or the death of such employee from such injury." (Emphasis added.)

Plaintiff does not dispute that he received "occupational disability benefits" as that term is used in the Code but argues that the statute does not require that the Retirement System be reimbursed but only that the system *may* be paid or reimbursed. Intervenor contends that the trial court abused its discretion in denying the lien for disability benefits since the effect is to allow plaintiff a double recovery for the same injury. Intervenor argues that plaintiff has been reimbursed for his injuries by the personal injury settlement and should not be allowed to retain the disability payments as well, noting that one of the purposes of subrogation is to prevent a party from obtaining a double recovery for the same injury. (See *Geneva Construction Co. v. Martin Transfer & Storage Co.* (1954), 4 Ill. 2d 273, 122 N.E.2d 540; *Railkar v. Boll* (1970), 125 Ill. App. 2d 203, 260 N.E.2d 851.) Intervenor suggests that it was inconsistent for the trial court to award the Depart-

ment a lien for workers' compensation benefits but deny its lien and that the statute should be interpreted to require that the Retirement System be given a right of reimbursement. Intervenor disputes plaintiff's interpretation of the word "may" in section 14—129 and quotes the following language from *Hairgrove v. City of Jacksonville* (1937), 366 Ill. 163, 173, 8 N.E.2d 187, 192:

> "The rule is that the word 'may' shall be construed to mean 'must' or 'shall' in those cases, only, where the public interest and rights are concerned, and where the public or third persons have a claim *de jure* that the power shall be exercised, or where it is necessary to so construe it to carry out the intention of the legislature. [Citation.]"

■ In interpreting a statute to determine the intent of the legislature, courts will give words their ordinary and usual meaning, in the absence of a legislative intent to the contrary. (*Potts v. Industrial Com.* (1980), 83 Ill. 2d 48, 413 N.E.2d 1285.) The word "may" generally denotes ability or power but a secondary definition of may is "shall," or "must." (Websters New World Dictionary 877 (2d College ed. 1976).) We conclude that the statute must be construed to require a right of reimbursement in light of the clearly expressed legislative intent that the Retirement System be afforded a right of subrogation. In construing a statute, each section and word should be considered in connection with the entire statute to ascertain its meaning and promote the statute's essential purposes. (*Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 387 N.E.2d 300.) The purpose of granting subrogation in section 14—129 is to shift the ultimate responsibility for financial loss upon the third-party tortfeasor (*Geneva Construction Co.*). A construction favorable to plaintiff would have the effect of leaving the loss upon the Retirement System. Further, since the statute purports to incorporate section 5 of the Workers' Compensation Act, which *requires* that the employer be reimbursed, the obvious legislative intent was to provide that subrogation and reimbursement be recognized. (See Ill. Rev. Stat. 1981, ch. 48, par. 138.5(b).) To uphold the construction suggested by plaintiff would give the trial court the discretion of whether to allow the system reimbursement without any standards in the exercise of that authority. This result, far from providing guidance to interested parties, is avoided and the statute's purposes promoted by interpreting the word "may" to mean "must."

Plaintiff has also argued that should the statute be construed to require reimbursement, certain provisions of section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.5(b))

should be applied to section 14—129. Although intervenor has not briefed this issue, it agreed with plaintiff's construction at oral argument. The provisions of section 5(b) urged by plaintiff require a *pro rata* deduction from funds reimbursed to the employer for the cost of the suit as well as a deduction of 25% of the amount for attorney fees. Section 5(b) of the Workers' Compensation Act provides, in part:

> "Out of any reimbursement received by the employer pursuant to this Section [providing right of subrogation against third-party tort-feasors], the employer shall pay his pro rata share of all costs and reasonable necessary expenses in connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement." Ill. Rev. Stat. 1981, ch. 48, par. 138.5(b).

No cases have considered whether this provision applies to section 14—129 of the Illinois Pension Code, but an examination of that statutory language supports plaintiff's argument. Section 14—129 of the Code provides, in part:

> "[A]ll of the rights and privileges, including the right to notice of suit brought against such other person and the right to commence or join in such suit, as given the employer, *together with the conditions or obligations imposed under paragraph (b) of Section 5 of the 'Workers' Compensation Act', are also given and granted to the System ***."* (Emphasis added.) Ill. Rev. Stat. 1981, ch. 108½, par. 14—129.

■ We hold that the above provision of section 5(b) which requires a reduction in reimbursement for a *pro rata* share of expenses and a reduction of 25% for attorney fees is applicable to section 14—129 of the Illinois Pension Code as well. This construction is supported by the italicized language above which incorporates the obligations of section 5(b) and is consistent with the legislative purpose that subrogees bear a fair share of the cost of recovery from third-party tortfeasors. Since this issue was not considered by the trial court, on remand, the court should determine if the attorney's services substantially contributed to the settlement, as required by section 5(b) and if so, the required 25% reduction should be made. In either event, the trial court should make a *pro rata* deduction for costs.

Intervenor next argues that the trial court abused its discretion in

denying it a lien for contributions made to plaintiff's retirement account in the amount of $1,213.94. During plaintiff's period of disability the Retirement System made contributions to plaintiff's retirement account in amounts plaintiff would have paid had he been working. Such payments are provided for in section 14—127 of the Code, which states in part:

> "Credit during disability. A member shall receive credit during any period of nonoccupational or occupational disability for which benefits are paid of an amount representing the contributions the member would have made in active employment in the same position and in receipt of compensation at the rate in effect at the time disability occurred. Such amount shall be credited to the account of the member in lieu of contributions that would otherwise have been made." Ill. Rev. Stat. 1981, ch. 108½, par. 14—127.

Intervenor claims that the term "disability benefit" in section 14—129 is not defined in the Illinois Pension Code and should receive its ordinary and commonly understood meaning. Intervenor suggests that this meaning is simply a pecuniary advantage received during a period of disability as provided in section 14—127. In reply, plaintiff argues that section 14—127 makes no provision for a lien for retirement contributions and section 14—129 provides a lien for "occupational disability and death benefits" but not for retirement contributions.

▮▮ The language of section 14—129 at issue here provides for reimbursement to the Retirement System "for the amount of occupational disability or death benefit paid or to be paid by the System." (Ill. Rev. Stat. 1981, ch. 108½, par. 14—129.) Under article 14 of the Code, the term occupational disability benefit is a specific area of coverage provided for in section 14—123 of the Code, which is entitled "Occupational disability benefits," in contradistinction to section 14—124, which provides for "Nonoccupational disability benefit." (Ill. Rev. Stat. 1981, ch. 108½, pars. 14—123, 14—124.) Likewise, the term "Occupational death benefit" is a specific category of coverage provided in section 14—128, in distinction to paragraph 14—117 which provides a "Nonoccupational death benefit." (Ill. Rev. Stat. 1981, ch. 108½, pars. 14—117, 14—128.) Thus, despite intervenor's suggestion that the terms "occupational disability or death benefit" are not defined by the Code, it is clear that such language makes reference to specific categories of benefit coverage provided. Where a word is used in different sections of the same legislative act, there is a presumption it is used with the same meaning throughout unless a contrary

legislative intent is clearly expressed. (*People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 432 N.E.2d 855.) The distinction between these categories of benefits is evident throughout article 14 of the Code and dispels intervenor's contention that these terms are not defined. The literal language of the statute makes it evident that there is no statutory right of subrogation or reimbursement for retirement contributions made to a members account during a period of occupational disability. Section 14—129 contains no clear expression of a contrary legislative intent and the trial court correctly denied reimbursement for these amounts.

We find it unnecessary to address the final issue raised by the parties: Whether we should take judicial notice of a purported public document; our disposition is for the reasons stated. Accordingly, the order of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

Affirmed in part; reversed in part; and cause remanded.

MILLS, J., concurs.

PRESIDING JUSTICE WEBBER, specially concurring:

I concur in the result and in nearly everything which is said in the principal opinion. However, I take umbrage at the additional confusion added to the jambalaya which the reviewing courts nationwide have made out of the "shall-may" syndrome. For many years I have complained about the *ad rem* use of words (see *Illinois National Insurance Co. v. Trainer* (1971), 1 Ill. App. 3d 34, 37, 272 N.E.2d 58), and I find the same deficiency here. There is no necessity to resort to the fiction that sometimes—"may"—means—"shall"—and—sometimes—vice versa.

The operative phrase in section 14—129 of the statute as emphasized in the principal opinion is "to the end that the System created by this Article may be paid or reimbursed." This is a pure purpose clause. "To the end that" means "in order that." (Webster's Second New International Dictionary 843 (1959).) The same dictionary states that "in order to" means "for the purpose of." Webster's Second New International Dictionary 1716 (1959).

In a purpose clause "may" is the proper usage and indicates the obligatory nature thereof. An instructive article on the subject appears in Fowler, A Dictionary of Modern English Usage 287 (2d ed. 1965):

"[I]n order that is regularly followed by *may* and *might; i.o.t.*

*nothing may,* or *might, be forgotten.* The use of the subjunctive without a modal auxiliary (*i.o.t. nothing be forgotten*) is archaic. In some contexts, but not in most, *shall* and *should* may pass instead of *may* and *might* (*i.o.t. nothing should be forgotten*) but certainly the second, and perhaps the first also, of the *shall* examples below is unidiomatic. The other examples, containing *can* and *could, will* and *would,* are undoubtedly wrong: *The effort must be organized and continuous* i.o.t. *Palestine* shall *attract more and more of the race./ To influence her in her new adolescence* i.o.t. *we* shall *once more regain the respect and admiration we enjoyed under the old Russia./ It will conclude before lunchtime* i.o.t. *delegates can attend a mass meeting in London./ To supplement the work of the doctors on the panel* i.o.t. *every insured person in London* will *be able to obtain the very best medical attention./ If the duty had been left on wheat* i.o.t. *the farmer* could have *purchased the offals at a reasonable price . . / A special sign* i.o.t. *the motorist* would be *able to stop in time.*

These solecisms are all due to ANALOGY, *in order that* being followed by what could properly have followed *so that.* Although *in order that* has its uses, as the examples show, *that* or *so that* is less stiff and should be preferred when it will serve."

It follows that the statute is grammatically correct and need not be construed. It is mandatory by nature.