# Illinois Official Reports

## Appellate Court

---

### *Roberts v. Burdick*, 2021 IL App (5th) 190119

---

| | |
|---|---|
| Appellate Court Caption | BRITTON L. ROBERTS, Plaintiff-Appellee and Cross-Appellant, v. EDWARD LEE BURDICK and GDL TRANSPORT, INC., Defendants (State Employees' Retirement System, Intervenor-Appellant and Cross-Appellee; The Department of Central Management Services, Intervenor and Cross-Appellee). |
| District & No. | Fifth District<br>No. 5-19-0119 |
| Filed | August 18, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Union County, No. 15-L-8; the Hon. Mark M. Boie, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Richard S. Huszagh, Assistant Attorney General, of counsel), for appellant.<br><br>John Womick, of Womick Law Firm, Chtrd., of Carbondale, for appellee. |

JUSTICE CATES delivered the judgment of the court, with opinion.
Justices Wharton and Vaughan concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiff, Britton L. Roberts, brought suit against the defendants, Edward Lee Burdick and GDL Transport, Inc., for injuries Roberts sustained as a result of a motor vehicle accident. Roberts settled his claim against the defendants and brought a petition to adjudicate liens held by the Department of Central Management Services (CMS) and the State Employees' Retirement System (SERS). SERS intervened, seeking to establish its right to reimbursement and a lien against the personal injury settlement proceeds for occupational disability benefits and retirement account contributions it made to, and on behalf of, Roberts. In adjudicating the liens, the circuit court of Union County entered an order reducing SERS's right to reimbursement by $150,000, to account for funds Roberts transferred to his ex-spouse pursuant to an order entered in his dissolution proceeding. SERS appeals the circuit court's order reducing SERS's reimbursement rights. Roberts cross-appeals asserting the circuit court erred by failing to find that SERS consented to the reduction of its lien rights and by failing to order any offsets of disability benefits taken by SERS to be backdated to the date of injury. We reverse in part and affirm in part.


¶ 2                                    BACKGROUND
¶ 3        On April 10, 2013, Roberts was injured in a motor vehicle accident while performing road maintenance for his employer, the Department of Transportation. The vehicle Roberts was driving was struck by a semi-trailer truck being driven by Burdick in the course of his employment with GDL Transport, Inc.
¶ 4        On April 19, 2013, CMS began paying Roberts temporary total disability (TTD) workers' compensation benefits as a result of his injuries. Roberts's TTD benefits were equal to 66.66% of his average weekly wage. See 820 ILCS 305/8(b) (West 2012). That same date, SERS also began paying Roberts occupational disability benefits and making contributions to Roberts's state funded retirement account. As a State employee, Roberts was entitled to receive occupational disability benefits equal to 75% of his salary or average final compensation for the work-related injury. See 40 ILCS 5/14-123 (West 2012). In this case, Roberts was entitled to receive $3345 in monthly occupational disability benefits or 75% of his salary. Pursuant to section 14-129 of the Illinois Pension Code (40 ILCS 5/14-129 (West 2012)), the SERS monthly occupational disability benefit obligation was offset by the amount of workers' compensation benefits being paid to Roberts by CMS.[1] As such, Roberts began receiving

_____

[1] Section 14-129 of Pension Code provides that any amounts paid to an employee under those Acts shall be applied "as an offset to any occupational disability or occupational death benefit *** in such manner as may be prescribed by the rules of the board." 40 ILCS 5/14-129 (West 2012). Title 80, section 1540.90(a), of the Illinois Administrative Code specifies how SERS calculates and applies section 14-129 offsets. 80 Ill. Adm. Code 1540.90(a) (2021). Under section 1540.90(a)(1), if the amount of workers' compensation benefits is less than the monthly benefit provided under the Pension

$2973.06 in TTD benefits from CMS and $371.94 in occupational disability benefits from SERS, for a total of $3345 in monthly disability benefits. SERS also began contributing $379.10 to the retirement program on Roberts's behalf.

¶ 5 On February 27, 2015, Roberts filed suit in Union County against the defendants seeking recovery for his personal injuries. Roberts notified CMS, but not SERS, of his suit against the defendants. On March 20, 2015, the defendants removed the case to the federal district court for the Southern District of Illinois.

¶ 6 On April 6, 2015, Assistant Attorney General Paul Kmett, counsel for CMS, sent a notice of lien to Timothy Denny, Roberts's counsel, and to the defendants. The notice provided that CMS was claiming a lien pursuant to section 5(b) of the Workers' Compensation Act (Act) (820 ILCS 305/5(b) (West 2012)) against the proceeds of any amounts Roberts recovered from the defendants for personal injuries arising from the April 10, 2013, accident.

¶ 7 On June 15, 2015, SERS sent Roberts and Denny a letter indicating SERS had received notice of a proposed settlement of Roberts's workers' compensation case with CMS for $149,999. SERS indicated that, after deduction of attorney fees, costs, and future medical expenses, SERS would offset Roberts's future occupational disability benefits by $119,815.46, or $2676.01 per month for approximately 3½ years. On August 14, 2015, Roberts settled his workers' compensation case with CMS for a lump-sum permanent partial disability (PPD) benefit payment of $149,999.

¶ 8 On March 10, 2016, Denny informed Kmett that the personal injury case was scheduled for a settlement conference on March 16, 2016. On March 16, 2016, a federal magistrate conducted a settlement conference between Roberts and the defendants. Kmett also attended the conference, at which time he provided an updated lien amount for CMS and advised the parties that CMS's lien was nonnegotiable. At the conference, Denny further informed Kmett of the possibility that SERS had a lien on any of the proceeds from the settlement. Prior to that time, Kmett was unaware of a possible interest held by SERS and had not held himself out to Roberts or Denny as representing SERS. After the conference, Kmett contacted SERS and informed it of the pendency of the personal injury case. Kmett believed this was SERS's first notice of the existence of the third-party proceeding. SERS subsequently contacted the Attorney General's office and requested representation, and Assistant Attorney General Josue Barba was assigned to represent SERS.

¶ 9 On April 8, 2016, Denny e-mailed Kmett requesting the "final work comp lien amount." Kmett responded later that day and attached two spreadsheets to the e-mail. The first attachment, titled "CMS Lien Calculation for Employee Britton Roberts," was an itemized list of expenditures made by CMS in relation to the accident demonstrating that CMS had expended $258,248.93 in medical payments and disability benefits. The second spreadsheet, titled "SERS Lien Calculation for Employee Britton Roberts," was an itemized list of monthly disability payments and retirement contributions made by SERS to, and on behalf of, Roberts. The spreadsheet indicated that SERS had made a total of $28,586.82 in disability and contributions between April 29, 2013, and March 17, 2016. In the body of the e-mail, Kmett stated:

Code, SERS is only required to pay the difference between the workers' compensation benefits and the amount payable under the Pension Code. 80 Ill. Adm. Code 1540.90(a)(1) (2021).

"The CMS lien is not final due to one medical bill for $577.00. Please see the attached spreadsheet. The SERS lien is also not final since Mr. Roberts is still on disability. I am sure you would like to disburse settlement funds to your client, which I am okay with, as long as you hold enough money to cover lien amounts."

Kmett carbon copied Barba on the e-mail.

¶ 10 On April 20, 2016, Roberts settled his personal injury claim against the defendants for $625,000. In the settlement agreement, Roberts agreed to satisfy "any and all applicable subrogation interests or liens, including but not limited to workers' compensation liens." Paragraph 18 of the agreement provided that, pursuant to section 5(b) of the Act (820 ILCS 305/5(b) (West 2012)), Roberts "must reimburse the State of Illinois $192,313.23 representing the amount to which the State of Illinois is entitled to Workers' Compensation Benefits previously paid to, or on behalf of," Roberts. The settlement agreement was signed only by Roberts. Following Roberts's execution of the settlement agreement, Denny, Kmett, and Barba attempted to reach a settlement on the agencies' liens, but these attempts were unsuccessful.

¶ 11 On May 4, 2016, Roberts filed in the federal court a motion for declaratory judgment and/or petition to adjudicate the liens of the State of Illinois. On May 13, 2016, the federal court denied the motion without prejudice, finding the motion was incomplete and undeveloped as to the procedural rules and mechanisms for adding the State of Illinois to the proceeding and the court's jurisdiction. On May 19, 2016, the defendants issued payment of the settlement funds, satisfying their obligations under the terms of the settlement agreement.

¶ 12 On June 3, 2016, Roberts filed an amended motion for declaratory judgment and/or petition to adjudicate the statutory liens in the federal court action. On June 27, 2016, CMS and SERS each filed a motion to intervene in the federal court proceedings. On July 1, 2016, the defendants filed a motion to dismiss, requesting that they be dismissed from the case.

¶ 13 On July 29, 2016, the federal district court judge conducted a telephone conference on the motion to dismiss the defendants and the motions to intervene filed by the state agencies. The conference was attended by counsel for the parties and the state agencies. During the conference, the court stated that at the time of the March 2016 settlement conference, "everyone was aware that [CMS and SERS] held liens on some of the funds *** as part of any recovery in the case because Roberts received both pension—or maybe disability payments— as well as workers' compensation benefits from the State of Illinois after the accident." The defendants requested that they be dismissed from the case because they had transferred the settlement funds to Roberts and, pursuant to the terms of the settlement agreement, Roberts was responsible for satisfying any and all liens. Denny agreed, indicating that the amount of CMS's lien would remain "in trust pending the outcome of this issue" and that "the state retirement lien mostly will be what they want to take as an offset going forward, not money that will have to be paid to them at this point." The court asked if there was any objection to the dismissal of the defendants, and when no objection was made, the court dismissed the defendants from the cause with prejudice.

¶ 14 Upon questioning by the court, SERS indicated that its lien for disability benefits and service contributions was $29,714.34, as of April 22, 2016, and CMS indicated that its lien was $256,987.93, as of that day. Denny advised the court that 25% of this amount would be retained as the agencies' share of statutory attorney fees and that the remaining 75% was being held in trust. The participants discussed Roberts's anticipated future occupational disability benefits, which far exceeded the amount of the personal injury settlement, and that, absent

- 4 -

some other agreement, SERS's right to reimbursement would consume the entirety of the remaining settlement funds. Denny advised the court that settlement negotiations broke down because SERS was requesting "a complete offset of [Roberts's future occupational disability benefits] until—basically, all $600,000 was gone."

¶ 15    On September 29, 2016, the federal magistrate conducted a second settlement conference, this time attended by counsel for Roberts and the two state agencies. The participants were unable to successfully settle the case. On October 4, 2016, the federal court entered an order denying Roberts's motion for declaratory judgment and/or petition to adjudicate the liens, and denying CMS's and SERS's motions to intervene. The court again found that Roberts's petition to adjudicate the liens was undeveloped with regard to the federal court's jurisdiction and the procedural mechanism to add the state agencies. The court noted that Roberts sought to have CMS's and SERS's liens declared void based on the agencies' failure to intervene in the action earlier but that Roberts provided no legal authority or argument to support his claim. The court denied Roberts's motion on those bases. The court also denied the motions of CMS and SERS seeking to intervene, finding the agencies could assert their liens in another forum, specifically in state court. The federal district court dismissed the case with prejudice on October 11, 2016.

¶ 16    On October 7, 2016, Roberts filed in the circuit court of Union County a petition to adjudicate the liens against the personal injury settlement proceeds. The petition alleged that CMS had asserted a lien of approximately $192,000 for benefits paid under section 5(b) of the Act (820 ILCS 305/5(b) (West 2012)) and that SERS had asserted a lien for amounts it paid and will pay in the future for occupational disability benefits pursuant to section 14-129 of the Pension Code (40 ILCS 5/14-129 (West 2012)). In his petition, Roberts asserted that CMS and SERS waived their interest in the proceeds of the personal injury settlement by allowing the federal court to "adjudicate this case to finality on the merit." Roberts requested that the court enter an order declaring the liens of CMS and SERS to be null and void.

¶ 17    On January 31, 2017, CMS and SERS each filed a petition for leave to intervene in the Union County case and a response to Roberts's petition to adjudicate the liens, denying that they had waived their statutory liens. On February 14, 2017, Roberts filed his objections to the petitions for leave to intervene, again asserting that CMS and SERS had waived their liens against the personal injury settlement proceeds. On March 3, 2017, CMS and SERS each filed a response to Roberts's objection to their petitions asserting that they had not waived their liens and that section 5(b) of the Act and section 14-129 of the Pension Code, respectively, provided them with a right to reimbursement regardless of whether they intervened in the third-party suit to protect their lien. On April 21, 2017, the circuit court granted the petitions for leave to intervene filed by CMS and SERS.

¶ 18    On June 22, 2017, Roberts filed a motion to enforce the settlement agreement. Roberts argued that the State of Illinois consented to the terms of the settlement agreement by failing to intervene in the federal proceedings before execution of the agreement and by failing to object to the dismissal of the third-party tortfeasors. Roberts requested that the court enter an order directing Roberts to pay the State of Illinois $192,313.23, as provided in paragraph 18 of the settlement agreement and to "nullify" any other claim or liens against the settlement proceeds.

¶ 19    On July 13, 2017, SERS and CMS each filed a motion to strike Roberts's motion to enforce the settlement agreement and a motion to disburse the settlement proceeds. In its motion

seeking payout from the settlement agreement, CMS indicated that it had a lien in the amount of $256,987.93 and was entitled to recover 75% of such, or $192,740.95, under section 5(b) of the Act. SERS also filed a motion to disburse settlement proceeds, indicating it had made disability payments and retirement contributions on Roberts's behalf in the amount of $46,186.88 since April 2013. SERS alleged that it was anticipated that Roberts would continue to receive benefits from SERS through 2038, in an amount exceeding $800,000. SERS requested that the remaining proceeds after payment of CMS's lien, attorney fees, and costs be held in trust or escrow in anticipation of the future payments to be made by SERS, with SERS entitled to periodic reimbursement from these funds.

¶ 20    Meanwhile, on July 31, 2017, in a separate proceeding, the circuit court of Union County entered a bifurcated judgment of dissolution of marriage, dissolving Roberts's marriage to his wife Farah Roberts. The record indicates that Farah Roberts had filed for a dissolution of her marriage to Roberts on February 7, 2013, approximately two months before the accident. Also on July 31, 2017, the spouses entered into a marital settlement agreement wherein Roberts agreed to pay Farah Roberts $150,000 from the personal injury and workers' compensation settlement proceeds related to the accident. That day, the dissolution court entered an order accepting the parties' marital settlement agreement.[2]

¶ 21    The following day, on August 1, 2017, Denny e-mailed counsel for CMS and SERS advising them that the dissolution court had ordered Roberts to distribute $150,000 of the settlement proceeds to his ex-spouse by August 10, 2017. Denny indicated that he was "unable to protect" the State's interest in the funds because he disagreed with the proposition that the State held any interest in the funds. On August 7, 2017, SERS filed a petition for leave to intervene and a motion to stay transfer of the settlement proceeds in the dissolution action. The matter was set for a hearing on August 22, 2017.

¶ 22    On August 22, 2017, the dissolution court entered an order memorializing its acceptance of the Robertses' marriage settlement agreement. The order indicated that Roberts was to pay Farah Roberts $150,000 on or before August 10, 2017, for any and all claims she may have in the workers' compensation and personal injury settlements received by Roberts. It also established Roberts's child support obligation for his three minor children as $124 per month, which the court deemed to be 32% of Roberts's occupational disability benefit. On August 23, 2017, the dissolution court entered an order denying SERS's request to intervene in the dissolution proceeding because the dissolution matter had been pending since February 2013 and SERS "had a remedy available for reimbursement of any future payments," in that it could offset Roberts's future disability benefit payments.

¶ 23    On September 28, 2017, SERS filed an amended motion to disburse the settlement proceeds. SERS asserted that after deduction of the statutory attorney fees, costs, and CMS's lien from the personal injury settlement proceeds, SERS was entitled to reimbursement in the amount of $276,009 for past and future benefit payments. SERS requested immediate repayment of the benefits it had paid from April 2013 through September 2017. SERS also requested that Roberts receive any remaining balance of the personal injury settlement funds, but that SERS recoup the remaining amount of its right to reimbursement by offsetting Roberts's future occupational disability payments.

---

[2]The judge presiding over the dissolution proceedings was not the same judge who was considering the lien issues raised by CMS and SERS.

¶ 24    On October 16, 2017, the circuit court held a hearing on Roberts's motions to enforce the settlement agreement and the agencies' motion to disburse the settlement proceeds. At the hearing, Roberts asserted that CMS and SERS consented to the terms of the settlement agreement because they did not intervene in the federal court proceedings before the case was settled, they did not participate in settlement negotiations, and they consented to the dismissal of the defendants after becoming aware of the terms of the settlement agreement. Specifically, Roberts sought to cap the recovery of the state agencies at $192,313.23, the figure set forth in paragraph 18 of the settlement agreement as the amount of workers' compensation benefits paid to or on behalf of Roberts. SERS and CMS asserted they were not bound by the terms of the settlement agreement because they were not parties to that agreement. Roberts also argued that any recovery by SERS should be reduced by the $150,000 Roberts paid to his ex-spouse in the dissolution case. Roberts asserted that SERS waived its right to these funds by failing to file a motion to reconsider or an appeal from the dissolution court's order denying its motion to intervene.

¶ 25    On October 27, 2017, the circuit court entered an order denying Roberts's motion to enforce the settlement agreement, finding that CMS and SERS attempted to protect their reimbursement rights in the federal court by seeking to intervene in those proceedings and that Roberts was aware of the agencies' liens prior to executing the personal injury settlement agreement. The circuit court indicated it did not agree with the dissolution court's conclusion that SERS could recoup the $150,000 transferred to Roberts's ex-spouse by offsetting future disability payments. The court found that, after the dissolution court denied SERS's motion to intervene, SERS failed to adequately protect its "interest" in the $150,000 by filing a motion to reconsider or an appeal. Based on this finding, the court ordered that SERS could not recover against the $150,000 Roberts transferred to his ex-spouse pursuant to the dissolution court's order.

¶ 26    On November 17, 2017, SERS filed a motion to reconsider the court's October 27, 2017, order reducing SERS's right to reimbursement by $150,000. On December 22, 2017, the circuit court held a hearing on SERS's motion to reconsider and its motion for accounting. During the hearing, Denny indicated that the funds to cover CMS's lien were preserved in counsel's trust account but that the remainder of the settlement funds had already been distributed to Roberts. Denny argued that the court should deny SERS's motion for an accounting because SERS had a remedy available, in that it could seek recoupment of its right to reimbursement by offsetting Roberts's future benefits payments. With regard to its motion to reconsider, SERS argued that it had a right to reimbursement for benefits paid irrespective of its lien rights, and that it was improper for the court to reduce SERS's reimbursement rights based on SERS's alleged failure to protect its lien rights. During the hearing, the court expressed concerns that it would be unfair to allow SERS to recoup the $150,000 Roberts paid to his ex-spouse by offsetting Roberts's future disability benefits because it would result in Roberts losing the money "twice."

¶ 27    On December 28, 2017, the trial court entered an order denying SERS's motion to reconsider. The court found that SERS failed to adequately protect its "interest" in the $150,000 in personal injury settlement funds by exhausting "all possible remedies" in the dissolution case. The court concluded that it would not be "fair" for Roberts to have to pay his ex-spouse $150,000 pursuant to the dissolution judgment and then for him to also pay this money to SERS through the offset of his future benefit payments. The court concluded that

- 7 -

SERS could not recover this $150,000 in the ultimate distribution of the personal injury settlement proceeds.

¶ 28    On February 4, 2019, the circuit court conducted an evidentiary hearing. CMS presented evidence that it paid Roberts $1025.30 in service-connected time[3] and $81,546.67 in TTD benefits between the April 10, 2013, accident and August 2015. In August 2015, Roberts settled his workers' compensation claim for a lump-sum PPD payment of $149,999. CMS also paid $24,416.96 to medical providers. In sum, CMS expended $256,987.93[4] in workers' compensation benefits to, or on behalf of, Roberts. After a 25% deduction for statutory attorney fees, CMS's net lien against the personal injury settlement proceeds was $192,740.95. This amount was undisputed by all parties.

¶ 29    Karen Brown, an employee of SERS, testified that SERS administers the disability and retirement program for all State of Illinois employees. Brown testified that for work-related injuries, state employees are entitled to receive occupational disability benefits equal to 75% of the member's salary or average final compensation, whichever is higher. In this case, Roberts was entitled to $3345 in monthly occupational disability benefits from SERS beginning on April 19, 2013. A member's total disability benefit increases by set percentages over time, and Roberts's total benefits increased by 7% in January 2018 and will increase 3% every year after.[5] SERS also makes retirement contributions on Roberts's behalf to the SERS's pension plan. SERS anticipated that Roberts would continue to receive occupational disability benefits until his retirement in February 2038. Brown testified that SERS offsets an employee's monthly benefit by any workers' compensation benefit the employee receives. As such, in most of the months between April 2013 and August 2015,[6] Roberts received $2973.06 in monthly TTD payments from CMS and $371.94 in occupational disability benefits from SERS, for total disability benefits of $3345 per month. After Roberts settled his workers' compensation claim for $149,999 in August 2015, SERS calculated the amount of offsets to be applied to Roberts's future occupational disability benefits. After deducting attorney fees, costs, and future medical expenses, SERS found that the total offset amounted to $119,815.46. SERS calculated the monthly offset amount to be $2676 per month from September 2015 through April 2019 and $2070.74 in May 2019. As a result of this offset, SERS paid Roberts $669 per month in occupational disability benefits from September 2015 through December 2017. As Roberts's total disability benefits increased, SERS increased it monthly payments. Beginning in June 2019, after the offset for Roberts's workers' compensation settlement would be depleted,

---

[3]The evidence was that funds paid as "service-connected time" is compensation paid from the time of the accident until TTD benefits begin, generally a matter of three to five days. In this case, Roberts received service-connected time compensation for the period between the date of the accident on April 10, 2013, and the date his TTD benefits began on April 19, 2013.

[4]CMS did not admit an exhibit showing a complete itemization of benefits provided. A partial itemization shows slightly different figures as to the medical and TTD payments. The parties, however, did not dispute CMS's final calculation of benefits provided.

[5]Pursuant to section 14-125.1 of the Pension Code, a member's disability benefit increases by 7% on January 1 following the fourth anniversary of granting the benefit and 3% every year after. 40 ILCS 5/14-125.1 (West 2012).

[6]The exception being April 2013, when Roberts received $1189.22 in TTD benefits and $148.78 in occupational disability benefits, as Roberts was only compensated by these agencies after his disability determination following the April 10, 2013, accident.

SERS would be responsible for paying the full amount of Roberts's disability benefits, in addition to monthly retirement contributions on Roberts's behalf.

¶ 30 Between April 2013 and August 2015, SERS had paid $10,563.10 in occupational disability benefits directly to Roberts and $10,766.44 in retirement contributions, or benefits amounting to $21,329.54. Between September 2015 and February 2019, the date of the evidentiary hearing, SERS had paid $31,430.28 in occupational disability benefits directly to Roberts and $15,922.20 in retirement contributions, or benefits amounting to $47,352.48. During this period, SERS was credited $112,392 in offsets from the workers' compensation settlement. The evidence was that between April 2013 through February 2019, SERS had paid a total of $68,682.02 in benefits to, or on behalf of, Roberts. SERS anticipated that it would expend $1,084,944 in occupational disability payments and $86,434.80 in retirement contributions, or a total of $1,178,802 in future benefits, between March 2019 and February 2038.

¶ 31 At the hearing, SERS argued that it should be able to recoup $157,239.60 of the personal injury settlement proceeds by offsetting Roberts's future disability benefits. In support, SERS provided the following calculations:

| $625,000.00 | Total Amount of Third-Party Settlement |
| - $156,250.00 | 25% Statutory Attorney Fee |
| - $ 6,377.45 | Statutory Costs |
| $462,372.55 | Remaining Amount of Settlement Proceeds |
| - $112,392.00 | Amount of Offset for Roberts's Workers' Compensation Settlement from September 2015 through February 2019 |
| $349,980.55 | Remaining Settlement Proceeds After Reduction of Workers' Compensation Offset |
| - $192,740.95 | Net CMS Lien After Reduction for Statutory Attorney Fees |
| $157,239.60 | Amount to be recouped by SERS |

¶ 32 Brown testified that the $112,392, as seen above, was a "credit" SERS gave Roberts for the workers' compensation benefit offset that had been applied between September 2015 and February 2019. Brown indicated that, in the event CMS was paid the full amount of its lien, SERS would then owe Roberts the $112,392 as back pay. Brown testified at the hearing that SERS was "not claiming" compensation or reimbursement for the workers' compensation TTD benefits paid by CMS between April 2013 and August 2015 because this sum was not paid by SERS. After the presentation of the evidence, the parties agreed to the amount of statutory

attorney fees and costs as presented by SERS. The parties also agreed to the amount and priority of CMS's lien.

¶ 33    At the hearing, Roberts argued that, using SERS's figures, once the court deducted the $150,000 that Roberts was ordered to transfer to his ex-spouse in the dissolution case, SERS could only offset Roberts's future disability benefits by $7239.60. Roberts also argued that once he satisfied CMS's lien for workers' compensation benefits paid, SERS was obligated to pay him his full disability benefits beginning in April 2013. Roberts contended that he was entitled to credit not just for the $112,392 in offset workers' compensation benefits applied between September 2015 and February 2019 but also to the $84,434.90[7] in offset workers' compensation benefits that was applied between April 2013 and August 2015. Under Roberts's theory, once he reimbursed CMS, Roberts had never been paid workers' compensation TTD benefits and SERS would owe Roberts an additional $77,195.30[8] in occupational disability benefits.

¶ 34    SERS argued that Roberts's theory was inconsistent with the intent of the statute, which is to reimburse the State for benefits the agencies have provided. SERS asserted that Roberts was not entitled to a credit for the $84,434.90 in workers' compensation benefits that were offset by SERS between April 2013 and August 2015 because Roberts received these funds from CMS. SERS asserted that Roberts was entitled to a credit for $112,392 in workers' compensation benefits offset after September 2015 because Roberts did not receive these funds.[9] SERS requested that the court reconsider its prior ruling that SERS could not seek reimbursement for the $150,000 that Roberts transferred to his ex-spouse and allow SERS to offset Roberts's future occupational disability benefits in the amount of $157,239.60.

¶ 35    On March 5, 2019, the trial court entered an order on all pending issues. Consistent with the parties' agreement at trial, the court reduced the gross amount of the settlement, $625,000, by $156,250 in statutory attorney fees and $6377.45 in statutory costs, leaving $462,372.55. The court then reduced this amount by $150,000, to account for the amount Roberts paid his ex-wife pursuant to the dissolution judgment, leaving $312,372.55. The court found that CMS had a lien of $256,987.93 pursuant to section 5(b) of the Act and, after deducting 25% from this amount for its share of the statutory attorney fees, that it was entitled to recover $192,740.95 in full satisfaction of its lien. The court then reduced the remaining proceeds of $119,631.60 by $112,392.00, "for benefits accrued" from September 1, 2015, through February 28, 2019, and concluded that SERS was entitled to receive $7239.60 in full satisfaction of its lien. The court ordered that SERS "shall retain the $112,392.00 withheld as

---

[7] The $84,434.90 figure comes from one of SERS's exhibits, which provided an itemized calculation of the service-connected benefits and TTD payments made by CMS between the date of the accident and August 2015. CMS's exhibits indicate this figure as being either $82,571.97 or $84,140.17. CMS did not provide an itemization of its ending calculation, so it is unclear from the record why these figures differentiate.

[8] This figure is derived by subtracting the alleged amount of SERS's right to reimbursement of $7239.60, from the $84,434.90 in allegedly unpaid benefits.

[9] This factual assertion is incorrect. This money was clearly paid to Roberts in the form of a lump-sum payment as a result of his August 2015 workers' compensation settlement for $149,999. This error by SERS resulted in a $112,392 benefit in Roberts's favor.

an offset and recover an additional $7239.60 by offset as its total recovery from the third party settlement, at which time the offset shall terminate."

¶ 36    On March 26, 2019, SERS filed a notice of appeal, asserting the circuit court erred by reducing SERS's subrogation and lien rights under section 14-129 by $150,000 for the payment Roberts made to his ex-spouse in connection with their dissolution. On April 2, 2019, Roberts filed a cross-appeal, appealing from the circuit court's March 5, 2019, order "to the extent that the settlement agreement executed on April 20, 2016, should be enforced in its entirety" and arguing that any lien held by SERS should begin to offset from the date of the accident.

¶ 37    On April 26, 2021, the day before oral argument, Roberts filed a motion for leave to file a supplemental brief in this court, asserting SERS's lien was "void due to the doctrine of *res judicata*." Roberts requested leave to file his supplement brief and for this court to dismiss the appeal for lack of jurisdiction because the matter had previously been adjudicated. On April 27, 2021, this court entered a verbal order during oral argument and a written order following argument, denying Roberts's motion to file a supplemental brief. This court granted Roberts leave to file a motion challenging the court's subject-matter jurisdiction over the appeal and granted SERS time to respond to Roberts's motion. On April 30, 2021, Roberts filed a supplemental brief asserting SERS's lien was barred by waiver and *res judicata* and that the appeal should be dismissed for lack of jurisdiction. On May 11, 2021, SERS filed a timely response to Roberts's supplemental brief.

¶ 38                                ANALYSIS

¶ 39    On appeal, SERS argues that the circuit court lacked the statutory authority to reduce SERS's subrogation rights under section 14-129 of the Pension Code by $150,000 to account for funds Roberts transferred to his ex-spouse as part of his dissolution. On cross-appeal, Roberts asserts that the circuit court erred in failing to find (1) that CMS and SERS were limited to recovering a combined total of $215,126.81, the amount of the liens as represented by Kmett on April 8, 2016, and (2) that any offset of Roberts's occupational disability benefits should begin as of April 10, 2013.

¶ 40                          Jurisdiction on Appeal

¶ 41    Before turning to the merits of the case, we will address Roberts's supplemental filing regarding *res judicata* and this court's jurisdiction. We begin by observing that Roberts's April 30, 2021, filing of a supplemental brief was done in violation of this court's April 27, 2021, orders specifically denying his request to file a supplemental brief. We specifically instructed that Roberts was not permitted to file a supplemental brief but was permitted to file a motion regarding the court's subject-matter jurisdiction on appeal. Although it is unclear why Roberts disregarded this court's explicit order, this basis alone is sufficient for this court to strike Roberts's supplemental brief. See *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000) ("It is an elementary principle of law that a court is vested with the inherent power to enforce its orders."). Since Roberts's supplemental brief suggests that this court lacks jurisdiction over the appeal, however, we will briefly address his contention on the merits.

¶ 42    In his supplemental filing, Roberts argues that the doctrine of *res judicata* deprives this court of subject-matter jurisdiction. "The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent

actions between the same parties or their privies on the same cause of action." *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). The doctrine applies to all issues actually decided in the original action, as well as matters that could have been decided. *Rein*, 172 Ill. 2d at 334-35. Three requirements must be met for the doctrine to apply: (1) there is a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of the cause of action, and (3) there is an identity of parties or their privies. *Rein*, 172 Ill. 2d at 335.

¶ 43    Roberts asserts that this court's consideration of SERS's subrogation and lien rights is barred by *res judicata* because SERS did not appeal from both the federal court's and the dissolution court's denials of SERS's motions to intervene in those proceedings. Assuming *arguendo* that Roberts has demonstrated the requirements for *res judicata*,[10] the doctrine is not a jurisdictional bar. *Village of Maywood Board of Fire & Police Commissioners v. Department of Human Rights*, 296 Ill. App. 3d 570, 578 (1998). It is an affirmative defense, which can be waived. See 735 ILCS 5/2-619(a)(4) (West 2020) (involuntary dismissal based on certain defects or defenses including that the cause of action is barred by a prior judgment); see also *Village of Maywood*, 296 Ill. App. 3d at 578 (*res judicata* is an affirmative defense which can be waived, unlike subject-matter jurisdiction). Roberts did not raise *res judicata* in the circuit court proceeding and, thus, has waived consideration of the issue on appeal. Based on the foregoing, we find Roberts has failed to demonstrate that SERS's appeal should be dismissed for lack of jurisdiction.

¶ 44                        Legal Framework of the Pension Code

¶ 45    On appeal, SERS contends that the circuit court violated section 14-129 of the Pension Code and section 5(b) of the Act by reducing SERS's right to reimbursement by the $150,000 Roberts paid to his ex-spouse pursuant to the dissolution judgment. This is a question of statutory interpretation, which is a question of law that is reviewed *de novo*. *In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). The cardinal rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *In re Estate of Dierkes*, 191 Ill. 2d at 331. "In determining legislative intent, a court should first consider the statutory language." *In re Estate of Dierkes*, 191 Ill. 2d at 331. All provisions of a statute must be read as a whole and in such a manner as to give them the practical and liberal interpretation that the legislature intended. *In re Estate of Dierkes*, 191 Ill. 2d at 331.

¶ 46    SERS is a retirement and benefit system for employees of state departments that provides retirement, death, and disability benefits for employees and their dependents. 40 ILCS 5/14-101 (West 2020); *Griffin v. Dillinger*, 117 Ill. App. 3d 213, 215 (1983). Under section 14-123 of the Pension Code, an employee injured while in the performance and within the scope of his duties is entitled to receive an occupational disability benefit equal to 75% of the employee's final average compensation until a disqualifying event occurs. 40 ILCS 5/14-123

_____

[10]This is a generous assumption, as the record does not readily support a finding that any of the three requirements have been met. Roberts provides little or no support for his contentions that (1) the denial of a motion to intervene constitutes a final judgment on the merits as to SERS's claim of a lien, (2) either the personal injury case or the dissolution case involved an identity of the current cause of action regarding SERS's subrogation and lien rights, or (3) the parties in the action were the same in light of the fact that SERS was not a party to the federal court or dissolution proceedings because its motions to intervene were denied.

(West 2012). Disqualifying events include, but are not limited to, employment, reaching the age of retirement at 65, death, or the employee becoming no longer disabled. 40 ILCS 5/14-123 (West 2012). SERS must also credit the disabled member's retirement account with any amounts equaling the contributions that member would have made had he or she remained in active employment. 40 ILCS 5/14-127 (West 2012).

¶ 47    Section 14-129 of the Pension Code provides SERS with a right of subrogation where benefits have been paid to an employee as a result of injuries sustained due to the actions of a third-party tortfeasor. *Griffin*, 117 Ill. App. 3d at 216. The provision provides, in relevant part:

"In those cases where the injury or death for which an occupational disability or death benefit is payable under this Article was caused under circumstances creating a legal liability for damages on the part of some person other than the employer, all of the rights and privileges, including the right to notice of suit brought against such other person and the right to commence or join in such suit, as given the employer, together with the conditions or obligations imposed under paragraph (b) of Section 5 of the 'Workers' Compensation Act' [820 ILCS 305/5], are also given and granted to the System, to the end that the System created by this Article may be paid or reimbursed for the amount of temporary disability, occupational disability or death benefit paid or to be paid by the System to the injured employee, or his personal representative in the event of death, including any contribution amounts credited to the account of the member under Section 14-127, out of any judgment, settlement, or payment for such injury or death obtained by such injured employee or his personal representative from such other person, or be paid or reimbursed for such amount paid or to be paid by the System to the surviving spouse or children of such employee by virtue of the injury or the death of such employee from such injury." 40 ILCS 5/14-129 (West 2012).

¶ 48    This provision granting SERS a right to subrogation provides SERS with a right of reimbursement of disability benefits paid, or to be paid, from proceeds received by the employee from a third-party tortfeasor. *Griffin*, 117 Ill. App. 3d at 217. The purpose of granting SERS a right to subrogation is to shift the ultimate responsibility for financial loss upon the third-party tortfeasor. *Griffin*, 117 Ill. App. 3d at 217.

¶ 49    Section 5(b) of the Act, incorporated by reference in section 14-129, provides, in relevant part:

"(b) Where the injury or death for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, *if the action against such other person is brought by the injured employee or his personal representative and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, then from the amount received by such employee or personal representative there shall be paid to the employer the amount of compensation paid or to be paid by him to such employee or personal representative* including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act. ***

Out of any reimbursement received by the employer pursuant to this Section the employer shall pay his *pro rata* share of all costs and reasonably necessary expenses in

- 13 -

connection with such third-party claim, action or suit and where the services of an attorney at law of the employee or dependents have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then, in the absence of other agreement, the employer shall pay such attorney 25% of the gross amount of such reimbursement.

If the injured employee or his personal representative agrees to receive compensation from the employer or accept from the employer any payment on account of such compensation, or to institute proceedings to recover the same, the employer may have or claim a lien upon any award, judgment or fund out of which such employee might be compensated from such third party.

In such actions brought by the employee or his personal representative, he shall forthwith notify his employer by personal service or registered mail, of such fact and of the name of the court in which the suit is brought, filing proof thereof in the action. *The employer may, at any time thereafter join in the action upon his motion so that all orders of court after hearing and judgment shall be made for his protection. No release or settlement of claim for damages by reason of such injury or death, and no satisfaction of judgment in such proceedings shall be valid without the written consent of both employer and employee or his personal representative, except in the case of the employers, such consent is not required where the employer has been fully indemnified or protected by Court order.*

In the event the employee or his personal representative fails to institute a proceeding against such third person at any time prior to 3 months before such action would be barred, the employer may in his own name or in the name of the employee, or his personal representative, commence a proceeding against such other person for the recovery of damages on account of such injury or death to the employee, and out of any amount recovered the employer shall pay over to the injured employee or his personal representatives all sums collected from such other person by judgment or otherwise in excess of the amount of such compensation paid or to be paid under this Act, including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act, and costs, attorney's fees and reasonable expenses as may be incurred by such employer in making such collection or in enforcing such liability." (Emphases added.) 820 ILCS 305/5(b) (West 2012).

¶ 50    The first paragraph of section 5(b) grants the employer a right to reimbursement, providing the employer with the "right to recover certain amounts paid or to be paid to an employee where the employee has obtained a third-party judgment or settlement." *Scott v. Industrial Comm'n*, 184 Ill. 2d 202, 216 (1998). Other provisions of section 5(b) provide mechanisms to assist the employer in recovering the amounts for which it may be reimbursed. *Scott*, 184 Ill. 2d at 216. These include (1) the right to a lien on any award, judgment, or fund out of which the employee might be compensated by the third party (820 ILCS 305/5(b) (West 2012)) (paragraph three); (2) the right to written notice of the employee's actions against the tortfeasor (820 ILCS 305/5(b) (West 2012)) (paragraph four); (3) the right to join in the third-party action, at any time, to ensure that the court protects its right to reimbursement (820 ILCS 305/5(b) (West 2012)) (paragraph four); (4) the right to consent, in writing, to a release or settlement of claim, unless the employer has been indemnified or otherwise protected by court order (820 ILCS 305/5(b) (West 2012)) (paragraph four); and (5) the right to bring suit in the

employee's name if the employee does not bring a third-party action at least three months before the statute of limitations expires (820 ILCS 305/5(b) (West 2012)) (paragraph five).

¶ 51   The employer's right to reimbursement is independent of the mechanisms to assist in collection. The Illinois Supreme Court has held that an employer does not relinquish its overarching right to reimbursement, as found in paragraph one, by failing to utilize the recovery mechanisms contained elsewhere in the statute. *Scott*, 184 Ill. 2d at 216. In *Scott*, the court stated:

> "By using the term 'may' in the third and fourth paragraphs of section 5(b), the statute does not require an employer to intervene or to assert a lien in order to recover amounts obtained by an employee in a third-party proceeding. When an employer does not assert a lien, the employer forgoes a means of enforcing its claim. The employer does not, however, forfeit its right under the first paragraph of section 5(b) to recover amounts paid or to be paid to an employee where the employee has obtained a third-party judgment or settlement." *Scott*, 184 Ill. 2d at 216 (citing 820 ILCS 305/5(b) (West 1994)).

¶ 52   The court further concluded that, under section 5(b), the employer may make a claim for credits against the benefits it paid or will pay following the conclusion of a third-party proceeding without having obtained a lien in that proceeding. *Scott*, 184 Ill. 2d at 216-17. The court found that a contrary ruling "would be inconsistent with the general principle that an employee is not entitled to a double recovery." *Scott*, 184 Ill. 2d at 217.

¶ 53   The primary purpose of the Act is "to provide prompt and equitable compensation for employees who are injured while working, regardless of fault." *In re Estate of Dierkes*, 191 Ill. 2d at 331. Section 5(b), however, "allows both the employer and the employee an opportunity to reach the true offender while preventing the employee from obtaining a double recovery." *In re Estate of Dierkes*, 191 Ill. 2d at 331-32. An employer's reimbursement of workers' compensation payments from an employee's third-party recovery under section 5(b) is crucial to the workers' compensation scheme. *In re Estate of Dierkes*, 191 Ill. 2d at 331. Furthermore, the employer's right to full reimbursement is subject only to the setoffs specified in the statute, including costs, expenses, and attorney fees. *In re Estate of Dierkes*, 191 Ill. 2d at 334. As stated by our Illinois Supreme Court:

> "There is nothing in the statute that suggests a limitation on the employee's obligation of reimbursement from the third-party recovery. If an employer has made workers' compensation payments, the obligation of reimbursement exists regardless of the amount that the employee recovers. [Citation.] Thus, if the amount of compensation paid by the employer exceeds the employee's third-party recovery, then the employer is entitled to the entire recovery, less fees and costs." *In re Estate of Dierkes*, 191 Ill. 2d at 332-33.

¶ 54   All of these policy statements regarding employers and the Act are equally applicable to SERS as a disability benefit system. As already observed, section 14-129 of the Pension Code incorporates section 5(b) of the Act and "all of the rights and privileges *** as given the employer, together with the conditions and obligations imposed under [section 5(b)], are also given and granted to the System, to the end that the System *** may be paid or reimbursed for the amount of temporary disability, occupational disability or death benefit paid or to be paid by the System." 40 ILCS 5/14-129 (West 2012). Again, section 14-129 provides SERS with the rights to subrogation and reimbursement, the purpose of which is to shift the ultimate

responsibility for financial loss upon the third-party tortfeasor. *Griffin*, 117 Ill. App. 3d at 217.

¶ 55                     Circuit Court's Reduction of SERS's Right to Reimbursement

¶ 56        Here, the circuit court entered several orders finding that SERS was not entitled to seek reimbursement by offsetting Roberts's future disability payments of the $150,000 Roberts transferred to his ex-spouse pursuant to the order of the dissolution court. This reduction of SERS's reimbursement right was based on the court's finding that SERS failed to adequately protect its "interest" in the $150,000 by exhausting "all possible remedies," such as filing a motion to reconsider or an appeal, after the dissolution court denied SERS's motion to intervene in the dissolution case. The circuit court also articulated the belief that it would not be "fair" for Roberts to have to pay his ex-spouse $150,000 pursuant to the dissolution judgment and for him to reimburse SERS for these funds through the offset of his future benefit payments.

¶ 57        On appeal, SERS argues that the circuit court lacked the statutory authority to reduce SERS's right to reimbursement under section 14-129 of the Pension Code based on its alleged failure to adequately protect its "interest" in the proceeds of the personal injury settlement. SERS contends that its right to reimbursement cannot be reduced due to its alleged failure to protect its lien rights. SERS contends that the circuit court's ruling conflates SERS's overarching right to reimbursement with SERS's lien rights, which is just one mechanism SERS can choose to enforce its right to reimbursement. We agree.

¶ 58        Under the statutory scheme, as set forth above, SERS has a clear right of reimbursement when it pays benefits to an employee as a result of injuries sustained due to the actions of a third-party tortfeasor. 40 ILCS 5/14-129 (West 2012). Section 14-129 of the Pension Code unambiguously grants SERS the same rights and privileges as an employer under section 5(b) of the Act. 40 ILCS 5/14-129 (West 2012). As already noted, this includes a right to reimbursement for the benefits it paid or will pay, regardless of whether it utilizes the procedural rights contained elsewhere in section 5(b) to protect and secure its right of reimbursement. See *Scott*, 184 Ill. 2d at 216. The statutes and precedent are clear that SERS did not have an obligation to protect its "interest" to the $150,000 paid out of the personal injury settlement proceeds in the dissolution proceeding in order to seek reimbursement against Roberts.

¶ 59        SERS also contends that the circuit court lacked the authority to reduce SERS's right to reimbursement based on a finding that such a reduction was "fair." On appeal, Roberts asserts that section 5(b) of the Act granted the circuit court the authority to "evaluate fairness and reasonableness" of the allocation of settlement proceeds when distributing a section 5(b) workers' compensation lien. Roberts contends that the circuit court had a "duty" to "exercise some discretion and fairness" in adjudicating the distribution of the settlement proceeds.

¶ 60        The issue before the circuit court was the determination of CMS's and SERS's statutory reimbursement and lien rights. This task required an interpretation of the agencies' rights under the statutory provisions. It was not an equitable evaluation of the "fairness and reasonableness" of the allocation of settlement proceeds subject to the court's discretion. See *Continental Casualty Co. v. Sweda*, 113 Ill. App. 2d 423, 428-30 (1969) (finding section 5(b) required full indemnification and rejecting the argument that the circuit court can make an "equitable" distribution under the Act). Section 14-129 provides SERS with a statutory right to

reimbursement for benefits it paid and will pay, and Roberts has not provided this court with any legal authority for the circuit court's reduction of SERS's right in this case.

¶ 61    We do believe it is necessary, however, to briefly address the issue of equity. The common refrain made by Roberts, and accepted by the circuit court, is that it was fundamentally unfair for Roberts to "lose the money twice," meaning the dissolution court ordered him to pay his ex-spouse $150,000 of the personal injury settlement proceeds and SERS is permitted to recoup $150,000 from his future disability benefits. First, we must clarify that Roberts is not losing the money "twice." We must reiterate that the purpose of the subrogation statute is to *reimburse* the state agencies for monies they *have and will provide* to Roberts. Without reimbursement, Roberts would be receiving a double recovery for the same injury, in that he would be retaining the personal injury settlement from the tortfeasor and the disability benefits from the agencies.

¶ 62    Whether it was "fair" for the dissolution court to order Roberts to transfer a portion of the settlement proceeds to his ex-spouse is not before this court and was not before the circuit court. We believe it is important to recognize that neither this court, nor the circuit court, had the entirety of the dissolution court file before it. Those portions of the record from the dissolution proceeding, which are in the appellate court record, suggest that the transfer between the spouses was not an impulsive action. The dissolution court's August 22, 2017, order clearly indicates that the payment from Roberts to Farah Roberts was (1) part of a marital settlement agreement *reached by the parties* and (2) related to all potential claims Farah Roberts had to Roberts's $625,000 personal injury settlement and $149,999 workers' compensation settlement. The record indicates that the dissolution court knew that the personal injury settlement funds were in dispute and that it believed SERS could seek reimbursement of the funds via recoupment of future benefits. This finding indicates that, in approving the parties' marriage settlement agreement, the dissolution court contemplated the possibility that Roberts may have to repay this sum to SERS. This is consistent with the dissolution court's order setting Roberts's child support obligation for his three minor children at $124 per month, which the judgment indicates represented 32% of Roberts's occupational disability benefit. This means that, for child support purposes, the dissolution court calculated Roberts's monthly occupational disability benefit as $387.50 per month, a fraction of Roberts's full benefit amount. Although this court is not attempting to speak to the propriety of the dissolution court's child support order, we simply must acknowledge that the dissolution court's orders were based upon its full view of the case before it, not upon the sliver of facts presented to this court.

¶ 63    Roberts also asserts that the circuit court's ruling can be upheld because the $150,000 transfer from Roberts to Farah Roberts could be considered payment on a loss of consortium claim or a child support award. Roberts's suggestion that this court can retroactively classify the $150,000 in proceeds transferred as part of the marriage settlement agreement as a payment on a loss of consortium claim or as a child support award is wholly without merit. A loss of consortium claim is an independent action brought by a spouse to recover injuries suffered by the spouse, such as loss of support or loss of society. *Page v. Hibbard*, 119 Ill. 2d 41, 48 (1987). The employer does not have a right to reimbursement under section 5(b) against a judgment or settlement on a loss of consortium claim because those are not funds received by the employee in an action brought by the employee. *Page*, 119 Ill. 2d at 48. In this case, Farah Roberts did not bring a loss of consortium claim against the third-party defendants, and nothing in either

the personal injury settlement or the dissolution order suggests that these funds were for injuries associated with a loss of consortium claim. Furthermore, nothing in the dissolution order indicates that the $150,000 transfer between the spouses constituted an award of child support, and even if it could be classified as such, Roberts has not cited any authority supporting a finding that such a classification would exempt the funds from reimbursement under section 14-129 or section 5(b).

¶ 64    Based on the foregoing, we find that the circuit court erred in reducing SERS's right to reimbursement for the occupational disability benefits and retirement contributions it paid and will pay to Roberts by $150,000. The circuit court's order reducing SERS's right to reimbursement via the offset of Roberts's future occupational disability benefits by $150,000 is reversed.

¶ 65                                        Waiver of Lien

¶ 66    In his first point on cross-appeal, Roberts argues the circuit court should have limited the state agencies to recovering a combined total of $215,126.81, the amount of the liens as represented by Kmett on April 8, 2016.

¶ 67    On April 8, 2016, Denny e-mailed Kmett requesting the "final work comp lien amount." Kmett responded later that day and attached two spreadsheets to the e-mail. Kmett carbon copied counsel for SERS on the e-mail. The first spreadsheet, titled "CMS Lien Calculation for Employee Britton Roberts," indicated that CMS had expended $258,248.93 in medical payments and disability benefits for Roberts's benefit. The second spreadsheet was titled, "SERS Lien Calculation for Employee Britton Roberts." This spreadsheet stated that it was a "[s]ubrogation worksheet for disability and service contributions already paid" and indicated that a total of $28,586.82 in disability and contributions had been made by SERS between April 29, 2013, and March 17, 2016. In the body of the e-mail, Kmett stated:

> "The CMS lien is not final due to one medical bill for $577.00. Please see the attached spreadsheet. The SERS lien is also not final since Mr. Roberts is still on disability. I am sure you would like to disburse settlement funds to your client, which I am okay with, as long as you hold enough money to cover lien amounts."

¶ 68    If the two totals on these spreadsheets are added, they equal $286,835.75. If this number is reduced by 25%, for statutory attorney fees, the total is $215,126.81.

¶ 69    On April 20, 2016, Roberts entered into a settlement agreement with the defendants for $625,000. In the agreement, Roberts agreed to satisfy "any and all applicable subrogation interests or liens." The settlement agreement also included a provision, in paragraph 18, indicating that Roberts agreed to reimburse the State of Illinois $192,313.23, pursuant to section 5(b), for workers' compensation benefits he received. The record suggests that, upon receipt of the payment from the defendants, Roberts's counsel retained $215,126.81 in his trust account in order to satisfy the liens as represented by CMS and SERS as of April 8, 2016.

¶ 70    Roberts's petition to adjudicate the liens filed in Union County, however, sought to have CMS's and SERS's liens declared null and void. Roberts subsequently filed a motion to enforce the settlement agreement, asserting CMS and SERS should be collectively limited to recovering $192,313.23 from Roberts's personal injury settlement as specified in paragraph 18 of the settlement agreement, asserting the agencies consented to a reduction of their liens by agreeing to the dismissal of the tortfeasor after execution of the settlement agreement.

¶ 71     On cross-appeal, Roberts now asserts that the circuit court erred in finding that CMS and SERS were not limited to recovering a total of $215,126.81 in liens against the personal injury settlement proceeds. Roberts asserts that Kmett's April 8, 2013, e-mail constituted the agencies' "written consent" under section 5(b) for Roberts to proceed with settlement so long as he "protected a specified lien amount." Roberts also contends that the agencies "memorialized their agreement to reduce their lien amounts" by consenting to the dismissal of the third-party defendants.

¶ 72     Roberts's position on appeal fails to acknowledge Kmett's specific statement in the e-mail that neither the CMS nor the SERS liens were final. Of particular import is Kmett's statement that "[t]he SERS lien is also not final since Mr. Roberts is still on disability." The spreadsheet setting forth SERS's current lien amount states that it was for "disability and contributions" made by SERS between April 29, 2013, and March 17, 2016. When placed in context, Kmett's statement that Denny could disburse settlement funds to Roberts "as long as you hold enough money to cover lien amounts," suggests that, while CMS and SERS may not seek a *lien* above the quoted amount, they were not waiving their right to seek reimbursement for future benefits paid.

¶ 73     Roberts's argument on cross-appeal continues to equate SERS's right to assert a lien with its right to reimbursement. These concepts are very different. The lien, as noted previously, is merely one tool by which SERS can enforce its right to reimbursement. Roberts has failed to provide this court with any argument or authority supporting a finding that SERS's waived its right to a lien against the personal injury funds or its right to reimbursement, which is the only right currently at issue.

¶ 74     Furthermore, Roberts's suggestion that CMS and SERS agreed to limit their recovery by consenting to the dismissal of the third-party defendants is unfounded by the record. At the July 29, 2016, federal district court telephone conference, the defendants requested that they be dismissed from the case because they had satisfied their obligations under the settlement agreement. In response to this request, Denny agreed with defense counsel and stated that the amount of the CMS lien would remain "in trust pending the outcome of this issue" and that "the state retirement lien mostly will be what they want to take as an offset going forward, not money that will have to be paid to them at this point." After this statement by Roberts's counsel, neither CMS nor SERS objected to the dismissal of the defendants. After the dismissal of the defendants, the remaining participants discussed at length Roberts's future disability benefits. During this conversation, Denny indicated that he was aware, prior to the hearing, that SERS was seeking to enforce its right to reimbursement of Roberts's future benefit payments and to recoup these funds through an offset from those future payments. The transcript of the July 29, 2016, hearing clearly demonstrates that SERS was not waiving it right to reimbursement and that Roberts's counsel was well aware of this fact before the defendants were dismissed from the federal case. Nothing in the record supports a finding that SERS waived or limited its right to reimbursement to the amount represented in Kmett's April 8, 2016, e-mail. The circuit court did not err in refusing to limit SERS's right to reimbursement on this basis.

¶ 75                                When SERS's Offsets Begin

¶ 76     Finally, Roberts asserts the any offset of occupational disability benefits taken by SERS should begin to accrue as of the date of the accident on April 10, 2013, because SERS became

- 19 -

responsible for paying the full amount of Roberts's disability benefits once Roberts reimbursed CMS for the workers' compensation disability benefits that it paid. Except in limited circumstances, section 14-129 of Pension Code provides that SERS shall pay occupational disability benefits to a state employee under section 14-123 only if his injury is found to be compensable under the Act or the Workers' Occupational Diseases Act (820 ILCS 310/1 *et seq.* (West 2012)). 40 ILCS 5/14-129 (West 2012). This section also provides that any amounts paid to an employee under those Acts shall be applied "as an offset to any occupational disability or occupational death benefit *** in such manner as may be prescribed by the rules of the board." 40 ILCS 5/14-129 (West 2012).

¶ 77 Title 80, section 1540.90, of the Illinois Administrative Code specifies how SERS calculates and applies section 14-129 offsets. 80 Ill. Adm. Code 1540.90(a) (2021). Section 1540.90(a)(9) provides that the workers' compensation benefit offset should be applied, "even though those amounts are recoverable under Section 5(b) of the Workers' Compensation Act (subrogation)" from a third-party tortfeasor. 80 Ill. Adm. Code 1540.90(a)(9) (2021).

¶ 78 Here, CMS paid Roberts's service-connected time benefits between April 10, 2013, and April 19, 2013. On April 19, 2013, Roberts began receiving TTD workers' compensation benefits from CMS and occupational disability benefits from SERS. Roberts's TTD benefits were for 66.66% of his average weekly wage. 820 ILCS 305/8(b) (West 2012). Roberts was entitled to occupational disability benefits from SERS equal to 75% of his average weekly wage. 40 ILCS 5/14-123 (West 2012). Pursuant to section 14-129, SERS offset Roberts's occupational disability benefits by the amount of Roberts's workers' compensation benefits. The evidence was that SERS took an offset of approximately $84,000 for workers' compensation benefits paid to Roberts between April 2013 and August 2015, and an additional $112,392 between September 2015 and February 2019. The circuit court, consistent with SERS's position at trial, granted Roberts a $112,392 credit for the offsets SERS applied between September 2015 and February 2019.[11] The circuit court, however, did not grant Roberts a credit for the approximately $84,000 in offsets SERS applied between April 2013 and August 2015.

¶ 79 Roberts argues that once he satisfied CMS's subrogation rights by reimbursing CMS the amount of workers' compensation benefits that he was paid, Roberts became entitled to his full benefits from SERS from the date of the accident, thus entitling him to payment of the offsets applied between April 2013 and August 2015. Roberts is essentially asserting that SERS is no longer entitled to take the statutory offset under section 14-129 for workers' compensation benefits paid and that SERS must now pay Roberts the amount of these previously credited offsets.

---

[11]SERS made its own accounting mistake in the circuit court, erroneously providing Roberts with a credit for $112,392 in workers' compensation benefits offsets between September 2015 and February 2019. At trial, SERS took the position that Roberts was entitled to a credit for the $112,392 in offsets because these benefits had not been paid to Roberts. This position was clearly in error, as this offset was based on a monthly allocation of the $149,999 lump-sum workers' compensation settlement paid to Roberts by CMS in August 2015. SERS acknowledges this error in Roberts's favor in its reply brief. SERS has not appealed from the circuit court's erroneous provision of this credit to Roberts, instead only appealing the circuit court's order that SERS's reimbursement rights be reduced by the $150,000 subject to the dissolution judgment. As such, that portion of the circuit court's order granting Roberts the $112,392 credit remains intact.

¶ 80    SERS's right to offset occupational disability payments by workers' compensation benefits, even when CMS is reimbursed for those benefits, is authorized by section 14-129 of the Pension Code and Title 80, section 1540.90(a)(9), of the Illinois Administrative Code. Roberts has not provided this court with citations to any authority supporting his theory that these offsets can be "reversed," resulting in forfeiture of his claim on appeal. Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018) provides that the argument portion of the appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Arguments that are not supported by citations to legal authority do not meet the requirements of Rule 341(h)(7) and are procedurally defaulted on appeal. *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11; Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not argued are forfeited on appeal).

¶ 81    Moreover, Roberts's position runs contrary to the concepts of reimbursement and double recovery. After the accident, Roberts received the benefits from CMS and SERS to which he was entitled, and the funds Roberts used to reimburse the agencies were obtained from the tortfeasor. Thus, after the reimbursement, Roberts still had a single recovery of benefits, as these benefits were paid by the tortfeasor, as intended by the statutes. The "offset reversal" advocated by Roberts would result in a second benefit payment to Roberts even though he has already been compensated for his injury. Based on the foregoing, we find the circuit court did not err in allowing SERS to enforce its right to reimbursement by offsetting Roberts's future occupational disability benefits.

¶ 82                                    CONCLUSION

¶ 83    For the forgoing reasons, the circuit court's judgment reducing SERS's right to reimbursement by $150,000 is reversed, and the cause is remanded for entry of a judgment consistent with this court's opinion. The circuit court's judgment is affirmed in all other respects.

¶ 84    Affirmed in part and reversed in part; cause remanded.